Wallace R. Condict

*v.*

James M. Flower *et al.*

106  105
22a  64
106  105
32a 587

*Filed at Ottawa November 20, 1882—Rehearing denied March Term, 1883.*

1.  ALTERATION—*not fraudulent, does not destroy contract as evidence.*
The alteration of a written agreement, after its execution, by a stranger to the
creditors secured thereby, and with no fraudulent purpose or intent as against
creditors, will not render the agreement inadmissible in evidence in favor of
one of such creditors.

2.  TRUSTEE—*cestui que trust bound by his appointment by acquiescence.*
A debtor made a written proposition to certain of his creditors, offering to
convey real estate, subject to incumbrances thereon, to any person selected
by them as a trustee to manage the property and remove prior incumbrances,
which was accepted by such creditors, and one of the creditors was selected
by all the others, except one, to act as trustee, and the debtor, in a few days
after, conveyed to the trustee for all the creditors accepting, who thencefor-
ward managed such property and advanced moneys to remove incumbrances,
without any dissent or objection by the creditor who did not originally con-
cur in the selection of the trustee:  *Held,* that the creditor not a party to the
selection of the trustee should be bound by his tacit acquiescence in the
acting of the one as trustee, and should not be heard to deny his being
selected as such.

3.  CONTRACT—*when binding on parties accepting proposition made to
them and another.*  Where a debtor offers, in writing, to seven of his cred-
itors, to convey his property, subject to certain conditions, to such person as
they may select as trustee, for the purpose of securing their demands, and
six of such creditors accept the proposition, and the debtor, waiving the non-
acceptance as to the other, conveys the property to the trustee selected, who
takes charge of and manages the trust property for the creditors accepting,
the written proposition so accepted will be a binding contract on the cred-
itors accepting the same.

4.  SAME—*parties bound by agreement under which conveyance is made
in part fulfillment.*  Where an agreement, in writing, is made between a
debtor and certain of his creditors, whereby the debtor is to convey his prop-
erty, subject to existing incumbrances, to a trustee selected by them, which
incumbrances the creditors agree to discharge by assuming such indebted-
ness in proportion to their several demands, and such conveyance is accord-
ingly made by the debtor to the trustee, this will not merge the written
agreement, but the agreement and the conveyance will stand together, and

the creditors will be personally liable for any deficiency of the advances made by the trustee which the proceeds of the property fail to satisfy in removing the incumbrances on the trust property.

5. SAME—*right to contribution where one creditor advances in excess of his share.* And where the trustee was president of a bank, one of the principal creditors, and in making the advances to relieve the trust property of incumbrances used the money of the bank, giving his notes therefor, as trustee, it was *held,* that the bank, in fact having made such advances, and in excess of its share, was in equity entitled to a personal decree against the other creditors, in its own name, for a contribution in respect to such advances, to make the common security available for all.

6. SAME — *construed as to assumption of another person's debt.* A debtor in failing circumstances proposed to certain creditors, in writing, to convey to a trustee, for their benefit, certain real estate, subject to all liens and incumbrances then standing of record against the same, and concluded, "and I to be kept harmless from any personal liability for or on account of any suits or liens against said property about to be conveyed," which offer was accepted, and a conveyance accordingly made: *Held,* that the provision of indemnity against personal liability was not on account of debts incurred in respect of the property, but was against personal liability on account of any suits or liens against the property, and did not render the creditors liable for a debt of the grantor in respect to a building on the property, when the mechanic's lien had been lost or cut off. ·

7. INTEREST—*on sums advanced by trustee to remove incumbrances.* Where a trust deed conveying property to a trustee in trust for certain creditors, allows the trustee ten per cent interest upon payments made from the proceeds of the trust property to discharge prior incumbrances, that rate may be retained on all advances made which are reimbursed by the proceeds of the property, but not on any excess of such advances in which a personal liability is sought to be enforced against the creditors named in the trust deed. As to that, only six per cent is recoverable. But if the trustee purchases any of the trust property, at a sale of the same under a prior trust deed, which was bearing ten per cent interest, and this is necessary to protect the title, the same rate may be allowed him by way of subrogation to the rights of the prior creditor whose debt is discharged by the sale.

8. CONTRIBUTION—*not defeated because property securing the parties might have, at one time, sold for enough to discharge all advances.* Where a trustee holding property in trust for six creditors, who were all liable for such advances as might be necessary to remove prior incumbrances, fails to . sell the trust property at the request of two of such creditors at a sum sufficient to cover all advances then made by him, other creditors being opposed to such sale, there being no abuse of his discretion in the matter, this will not have the effect of releasing such two creditors from contribution for the advances made to remove incumbrances and protect the property.

9. MECHANIC'S LIEN—*when defeated by sale under prior incumbrance.* Under the Mechanic's Lien law, a prior incumbrance on the premises has preference as to the land, and the lienholder as to the improvements; and if the improvements are destroyed by fire, the lien of the mechanic has nothing on which to attach except the equity of redemption, and the subsequent sale of the premises under a prior deed of trust will have the effect to cut off such lien entirely.

10. PURCHASER—*taking subject to incumbrance, imposes no personal liability on him.* Property conveyed subject to a lien or incumbrance does not impose any personal liability upon the grantee to the person holding the lien; and an agreement between certain creditors taking a conveyance of real property in trust to secure themselves, in which they "agree with each other to advance our due proportion of the amount which may be necessary to clear said property from liens and incumbrances," creates no obligation on their part to any one else for the payment of such liens or incumbrances.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

The contract and trust deed which are the foundation of this suit, are as follows:

"The undersigned hereby agree to convey to Stein, Hirsch & Co., Henry Greenebaum, Clark Lipe, Charles R. Steele, Wallace R. Condict, S. F. Leopold, and Ernst Prussing, or to such person, for their use, as they may elect, the land and premises known as Nos. 337, 339 and 341 State street, in the city of Chicago, subject to all incumbrances and liens now standing of record against the same, the consideration to be paid to me for the same being the release of a trust deed, and the indebtedness secured thereby, held by the said Stein, Hirsch & Co., Henry Greenebaum, Charles R. Steele, William R. Condict, S. F. Leopold, and the firm of Greenebaum & Foreman, said trust deed being secured on property on Wabash avenue, the said property on State street to be held by said parties in proportion to the amount of indebtedness held by said parties against me, and all such indebtedness to be surrendered to me, and I to be kept harmless from any

personal liability for or on account of any suits or liens against said property to be conveyed: *Provided, always,* that said parties to whom said property is to be conveyed shall give unto my brother, Ernst Prussing, the right to purchase said premises on or before July 1, 1874, upon the payment of all cash advanced by them on account of such purchase, and ninety per cent of all obligations surrendered by them to me on account thereof, as the same stood on April 1, 1874: *Provided, always,* that the indebtedness held against me by the firm of Greenebaum & Foreman may be retained by them against me: *Provided, also,* that no contract which may be given to my brother, as aforesaid, shall at any time be spread upon the public records, or made in any manner to incumber or cloud up the title to be conveyed by me: *And provided, further,* that the Prussing Vinegar Works shall be entitled to a lease of that part of the premises now occupied by them until the 1st day of January, A. D. 1875, at a rental of $200 per month, such rent to commence on the 1st day of April, A. D. 1874.

"Witness my hand and seal, this 4th day of April, A. D. 1874.

[SEAL.]                    Chas. G. E. Prussing.

"We accept the foregoing, and agree, each with the other, to advance our due proportion of the amount which may be necessary to clear said property from liens and incumbrances.

Stein, Hirsch & Co., $10,000.

German Nat. Bank, $11,500.
(by Henry Greenebaum, Pres't.)

First Nat. Bank of Waukegan, $5750.
(by Chas. R. Steele, Pres't.)

S. F. Leopold, $2608.

W. R. Condict, $2610.42.

E. L. Prussing, $2500."

"This indenture, made this 15th day of April, in the year of our Lord one thousand eight hundred and seventy four,

between the Prussing Vinegar Works, a corporation existing under the laws of the State of Illinois, having its principal office in the county of Cook, and State of Illinois, party of the first part, and Henry Greenebaum, of the said city of Chicago, party of the second part, witnesseth," (here follow words of conveyance of the real estate described in the foregoing proposition of agreement,) "subject, always, to all incumbrances or other charges against the same, as shown by the records of the aforesaid county of Cook: to have and to hold the said premises above bargained and described, with the appurtenances, unto the said party of the second part, his heirs and assigns, forever, upon the trusts and for the use and purpose hereinafter specified, in trust; to take the possession and control thereof, and collect the rents and profits thereof, and in his discretion to sell and convey the same to such person or persons, for such prices and upon such terms, as to him shall seem meet, and out of such rents and profits, and the proceeds of such sale, first, to pay all expenses incurred in and about the execution of his trust; second, all sums necessary to be paid on account of interest to accrue upon incumbrances against said premises, for taxes thereon, or for insurance of the buildings situate thereon; third, all sums of money advanced by the said party of the second part, or by any of the parties named hereafter as beneficiaries under this trust, for the purpose of removing existing charges or liens against said premises, with interest upon such amounts from and after their advancements, and until the payment thereof, at the rate of ten per cent per annum; and fourth, the balance of such rents, profits and proceeds to be allotted and paid as follows: To the firm of Stein, Hirsch & Co., the sum of $10,000; to the German National Bank of Chicago, the sum of $11,500; to the First National Bank of Waukegan, in the State of Illinois, the sum of $5750; to S. F. Leopold, and Wallace R. Condict, each, the sum of $2610; to E. L. Prussing, the sum of $2500; and to Clark Lipe, the sum of $6350.

*Provided, always,* that if such balance of rents, profits and proceeds shall be insufficient to pay all of the aforesaid specific amounts, then each one of said parties shall be paid a proportionately less amount; and if such a balance shall be more than sufficient to pay all of the aforesaid amounts, then the same shall each be increased proportionately, so as to make up the full amount of such balance," (then follows a covenant of seizin by the party of the first part,) "subject to such charges and liens against the same as are shown by the records of the said county of Cook," (and a covenant of warranty against all persons,) "except parties claiming or to claim under or by virtue of the aforesaid incumbrances."

(Signed, and sealed with the corporation seal.)

CHAS. G. E. PRUSSING,

Pre'st Prussing Vinegar Works.

E. L. PRUSSING,

[L. S.]

Sec'y and Treas. Prussing Vinegar Works."

This suit had its origin in a bill filed in the Superior Court of Cook county by Ernst L. Prussing, one of the creditors of Charles G. E. Prussing, who accepted the proposition of the latter, as above set forth, to compel the execution by Greenebaum of the trust created by the deed to him of April 15, 1874, the complainant charging that Greenebaum had received moneys from insurance on the buildings on the premises conveyed, and from rents, and that it was his duty to make sale of the property, account for all proceeds thereof, and all moneys paid to him on account thereof, pay off a mechanic's lien on the property which complainant claimed existed in favor of the Wartman Brothers, who are also parties in the suit, and to distribute the balance of the proceeds of the property to the parties entitled to it under the agreement between Charles G. E. Prussing and sundry of his creditors, above set forth.

The buildings on the property conveyed in trust by the deed of April 15, 1874, were totally destroyed by fire on

July 14, 1874, and at a trustee's sale, under a trust deed to Benjamin E. Gallup, executed prior to the deed of April 15, 1874, and prior to the alleged lien of the Wartman Brothers, and conveying the same premises to secure a loan of $25,000, Greenebaum, on February 15, 1876, became the purchaser of the premises. The bill alleges these facts, and denies that Greenebaum, by such purchase, acquired any rights adverse to the rights of the Wartman lien, and insists that Greenebaum was bound, under the above named writings, to pay off this mechanic's lien, and that he acted in the purchase as a trustee for the Wartmans, as well as for the other Prussing creditors.

Upon the execution of the trust deed of April 15, 1874, to Greenebaum, he took possession of the property conveyed, and managed it in accordance with the terms of the trust, collecting the rents up to the time the buildings were burned, (July 14, 1874,) paying off all liens and incumbrances on the property, except that of the Wartmans, out of such rents and out of moneys advanced by the German National Bank, and also thus paying taxes and assessments on the property, and some other necessary expenses; and when Mr. Flower became receiver of that bank, he afterward paid such taxes and assessments as they became due. Flower filed his cross-bill in the suit, to compel the other parties to the agreement of April 4, 1874, to pay to him their proportionate shares of the moneys so advanced by him and the bank,—seeking to have, first, a sale of the land, and distribution of its proceeds according to the terms of the trust deed; and then, a personal decree against each of the other Prussing creditors for their respective proportions of such advances. Charles G. E. Prussing and the Wartmans filed their cross-bills in the cause, asserting the right of the latter to a mechanic's lien upon the premises, and asking all appropriate relief in respect thereto, which they, or either of them, might be entitled to by virtue of the written instruments above set forth. Answers

were filed, proofs taken, and upon hearing the Superior Court granted the relief prayed, decreeing a sale of the property, and that from the proceeds should be paid, first, the expenses of the trust; second, to the Wartmans, $6242.75; third, to Flower, receiver of the German National Bank, $51,167.19; fourth, that any balance should be paid over to the creditors who signed the agreement of April 4, 1874, proportionately; and if there should not be enough to pay said sums, then a personal decree for the payment of the deficiency by such creditors proportionately, the sum found due to the Wartmans to be first paid in full. On appeal to the Appellate Court for the First District the decree was affirmed, and an appeal taken to this court by Condict, the other creditors assigning cross-errors on the record.

Messrs. Monroe & Leddy, for the appellant:

The proposition was altered after its acceptance, and the alteration being material, the law presumes it was made for a sinister purpose by a party in interest, and it devolves on the party offering it to show the contrary. *Hodge* v. *Gilman,* 20 Ill. 437; *Montag* v. *Linn,* 33 id. 551; *Gillett* v. *Sweat,* 1 Gilm. 475; *Gardner* v. *Harbeck,* 21 Ill. 129; *Kelley* v. *Trumble,* 74 id. 478; *Wyman* v. *Youmans,* 84 id. 403; *Burwell* v. *Orr,* id. 4.

The proposition not having been accepted by all the persons named, never became a completed contract. Appellant never participated in or assented to the selection of the trustee, and advances made by him could not bind appellant. Advances were not made by the German National Bank, represented by appellee, and consequently it was not entitled to enforce a contribution. The Wartmans failed to show they had any lien on the premises, and if they ever had any, it has been lost.

Property conveyed subject to a lien does not impose any personal liability on the grantees, to the person holding the lien. Jones on Mortgages, sec. 748.

There is no privity of contract between the Wartmans and the other parties. Our contract was with Prussing, to save him harmless from suits and liens against the property,— not to pay somebody else. When the trustee purchased under the prior trust deed to Gallup, he took the title freed from all subsequently created.

Under the Mechanic's Lien law a prior incumbrancer has a prior lien on the land, and a subsequent one on the buildings. *North P. Church* v. *Jevne,* 32 Ill. 215; *Smith* v. *Moore,* 26 id. 392.

The buildings being destroyed, the contractors would have no lien on the land until the prior incumbrances were fully paid.

The court also erred in allowing the bank interest against us, at the rate of ten per cent, on advances.

Mr. FRANK J. CRAWFORD, for the appellees the Wartmans:

The Wartmans' right to the relief decreed them rests on two grounds: First, their lien was clearly established in their suit for that purpose; and second, they are entitled to payment of their claim under the agreement of April 4, 1874, between Prussing and his creditors. The parties agreeing to keep Prussing harmless on account of any suits or liens against the property, became principal debtors, and Prussing taking the place of surety. *Marsh* v. *Pike,* 10 Paige, 595.

A purchaser of land assuming the payment of an existing lien becomes, as to the mortgagee or original lien debtor, the principal debtor, the mortgagor becoming but the surety. Jones on Mortgages, sec. 741; *Calvo* v. *Davies,* 8 Hun, 222. See, also, *Funk* v. *McReynolds' Admr.* 33 Ill. 496.

In equity the property subject to the lien becomes the primary fund out of which the debt is to be paid. 2 Washburn on Real Property, *575; *Comstock* v. *Hitt,* 37 Ill. 542; *Fowler* v. *Fay et al.* 62 id. 375.

The trustee had no power to procure the foreclosure of the deed of trust, and purchase the property at the trustee's sale. His power was limited to "removing existing charges or liens," which could only be done by paying them. His conduct in thus attempting to cut the Wartman claim was grossly fraudulent, both in fact and in law, and can not be sustained in a court of equity.

When the work was done by the Wartmans, under the contract with Prussing, they acquired a lien against this property, and Prussing was also under a personal liability. on the claim.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

Aside from the question as to the right of the Wartman Brothers to a mechanic's lien upon the premises conveyed to Greenebaum, and Charles G. E. Prussing's right in respect thereof, the right of Flower, the receiver of the German National Bank, is the only subject of contest in this case.

It is insisted that the proposition of agreement of April 4, 1874, should not have been received in evidence, because there was a material alteration thereof after the written acceptance appended thereto was signed. The only proof of this kind which we understand the testimony to show, is in the insertion of the words, "except two of the stores on State street," the whole effect of which is in the interest of the Prussing creditors, it entitling the Prussing Vinegar Works to a lease, at the same rental of $200 per month, of two stores less than were included in the agreement as originally drawn. This goes to show that the alteration was not made with any fraudulent purpose as against the creditors interested. They, or either of them, are not shown to have been in complicity with the making of the alteration, and it appears to have been made by one Addison,—a stranger to them. Under such circumstances, the German National Bank, one of the creditors, did not, by the alteration, lose the right to use the

instrument in evidence. *Bledsoe* v. *Graves*, 4 Scam. 382; *Rose Clare Lead Co.* v. *Madden*, 54 Ill. 261.

It is objected that all the creditors did not participate in the selection of Greenebaum as trustee. It appears sufficiently that they did all concur in his selection except Condict, as to whom there is no direct proof that he united in the selection,.and he testifies that he did not know of Greenebaum's being trustee until after the suit was brought. But he ought to have known of it, as respects this trustee. He accepted a proposition that the property should be conveyed to himself and other creditors, or to such person as they might elect for their use, and that he would advance his proportionate part of the amount necessary to clear the property from incumbrances, in pursuance whereof, eleven days after, the property is conveyed to Greenebaum, as trustee for the creditors, and he goes on ever after managing the property and advancing moneys to pay off incumbrances, with not a word of dissent or objection on the part of Condict. Under such circumstances he should be held bound, as by a tacit acquiescence in the acting of Greenebaum as trustee.

It is next insisted that there is no personal liability for any deficiency on the part of these creditors; that by the terms of the trust deed the trustee was to take possession and control of the property, collect the rents and profits, sell the property at his discretion, and out of the proceeds of the sale reimburse himself for all the expenses of the trust, and all advances for paying off incumbrances; that the property itself is the sole resource for such reimbursement. There would be much of force in this view were the deed of trust all there is in the case, but we think it must be taken in connection with the prior agreement of April 4, 1874. Against so doing, it is said, the proposition of April 4 was made to seven named creditors, of whom Clark Lipe was one; that it was .accepted by six only, not including Lipe, and so was of no binding force because not accepted according to its terms,

as it should have been done to render it effective. Prussing's causing the conveyance to be made shows that he waived the concurrence of Lipe in the proposition, and the written acceptance by the six creditors signifies that they were willing to enter into the proposed arrangement of themselves, without Lipe. There is no pretense of any understanding that the acceptance was not to be operative unless it was signed by Lipe. We can not doubt that the acceptance was binding upon the creditors who signed it, although Lipe did not sign. It is then said that the prior agreement should be taken as merged in, or superseded by, the trust deed. The deed made to the trustee was but the fulfillment of the agreement of April 4 in a single particular of it,—the conveying of the property,—and we are unable to comprehend how that conveyance can be held to be the doing away with the other parts of the agreement which contemplate the doing of things after the conveyance had been made,—such as, the provisions for the benefit of Prussing, and for advances by the creditors to clear the property from incumbrances. We see no reason why the prior agreement of April 4, and the trust deed, may not well stand together, and the former have force. They are, then, to be taken as parts of one transaction, and the creditors should be held personally liable for any deficiency of the advances made by the trustee the proceeds of the property fail to satisfy, for the reason that, by their agreement of April 4, 1874, they agreed with each other to advance their due proportion of the amount which might be necessary to clear the property from incumbrances.

It is objected that if there be any personal liability, it is to Greenebaum, the trustee; that Greenebaum borrowed the money which he advanced, from the German National Bank, and the bank's only recourse is against Greenebaum,—that it is not entitled to a decree for it against these creditors. The cross-bill of Flower alleges that Greenebaum borrowed the money from the bank, and gave his note therefor for some

$25,000, which is still due and unpaid. The form of the transaction was, a borrowing of money from the bank by Greenebaum. He was the president of the bank, and obtained the money needed to pay advances from the bank, giving his note, as trustee. All the money which was needed from time to time to pay off liens and incumbrances, and charges with respect to the property, was furnished by the bank in manner above stated. The bank being the largest creditor in the case, the money it let Greenebaum have was essentially an advance of the money by it, as one of the creditors interested, for the discharge of liens and incumbrances, for which it was equitably entitled to contribution from the other creditors under the agreement of April 4, and we see no substantial objection to its having a direct decree therefor in its own name.

Some exception is taken to the account rendered by the trustee, as not sufficiently proved. There does not seem to have been any contest in the court below as to the accuracy of the account. The trustee gave general testimony of its correctness, and we see no reason for disturbing the finding of the amount due as not sustained by the evidence. This is, however, with one reservation as to the item of ten per cent interest. So far as that could entirely be paid from the proceeds of the property the charge would be proper, because the trust deed allowed it. But in decreeing against the creditors personally they would not be liable for the payment of such interest unless it might be upon payments made in discharge of incumbrances bearing ten per cent interest. Further than that, to render the creditors liable to pay this rate of interest there must have been a contract on their part. There was none in this case. It is not found in the trust deed, all there is there being a simple permission that the trustee may, from the proceeds of the sale of the property, retain that interest on advances made for the purpose of removing incumbrances. And there is no provision in the

agreement of April 4 for the payment of such interest. All the interest that could be recovered under that agreement,—the only one the creditors have themselves made in the case,—would be the statutory rate of six per cent interest. The Gallup deed of trust on the property was bearing ten per cent interest, and upon the payment made on the sale of the property under that trust deed we are inclined to think ten per cent interest might be properly allowed, by way of subrogation to the rights of the creditor whose debt was discharged by the sale. This is the only instance we perceive of the payment of any charge upon the land bearing ten per cent interest.

It is urged that because two of these creditors, Stein & Hirsch, and the First National Bank of Waukegan, asked Greenebaum, the trustee, to sell the property in 1876, at an offer which had been made of $30,000, which was more than enough to cover advances to that time, and Greenebaum declined to make the sale, the right to contribution from those two of the creditors is gone. Greenebaum testifies that he declined to make the sale because the directors of the German National Bank, (of whom defendant Leopold, another of the creditors, was one,) did not wish him to make the sale. We can perceive no abuse of his discretion by the trustee in this matter, and certainly a mere difference of opinion among the several creditors as to when a good sale of the property could be made, should not have the effect which is claimed.

There remains for consideration the further question in respect of the alleged mechanic's lien of the Wartmans. The record shows that John P. Davies and others had instituted their proceeding in the circuit court of Cook county, against Charles G. E. Prussing and others, to establish a mechanic's lien in their favor upon the premises before mentioned, and that the proceeding was pending on January 21, 1874, when, on that date, the Wartmans filed in that proceeding their intervening petition, claiming to be entitled to a mechanic's

lien on the same premises, for work done and materials furnished in the erection of the building upon the premises, under a contract agreed on, and work commenced February 5, 1873. Subsequently, that proceeding, by agreement of parties, was transferred to the Superior Court, and consolidated and heard with the present cause. The Wartmans, also, on February 7, 1874, brought their action at law against Charles G. E. Prussing, in the Superior Court of Cook county, to recover judgment against him on his personal liability for the indebtedness in respect of which the mechanic's lien was claimed, and on trial recovered a personal judgment against Prussing in that action, November 7, 1874, for $6367.10. The date of the Gallup trust deed, before mentioned, on the premises, to secure a debt for money borrowed, was December 1, 1871, and recorded December 4, 1871. That trust deed, then, was an incumbrance on the land prior to the alleged mechanic's lien of the Wartmans. In such case of a prior incumbrance, by the provisions of the statute, the prior incumbrance has preference as to the land, and the lienholder as to the improvements. The building on the premises having been burned on July 15, 1874, there were then no improvements for the lien to attach upon,—there remained but the land, as against which the Wartmans had no claim until the prior trust deed had been satisfied. Their lien, if any, was only upon the equity of redemption, and the subsequent foreclosure sale of the premises, under the trust deed, to Greenebaum, on February 15, 1876, for the sum of $18,059.59, and trustee's deed to him, cut off their whole lien entirely, and afterwards they had no lien whatever upon the premises.

But in order to sustain the decree here in favor of the Wartmans, their counsel present the case upon the theory that from the trust deed to Greenebaum of April 15, 1874, and the prior agreement of April 4, there was what was tantamount to an assumption by these creditors of the payment of the indebtedness to the Wartmans, in respect of

which they claimed a lien, whereby the creditors became liable to the Wartmans, and Prussing stood but as a surety, and whereby Greenebaum stood in the relation of trustee to them, and his purchase of the premises under the trust deed should be held to have been by him as trustee for them, as well as for the other creditors. We will examine what there may be for the support of this theory. Looking at the trust deed to Greenebaum, we find in it nothing of any assumption by the creditors of the payment of any claims whatever. We see nothing which can be claimed as being in that direction, more than the clause conveying the property, "subject, always, to all incumbrances or other charges against the same, as shown by the records of the aforesaid county of Cook." But property conveyed *subject* to a lien does not impose any personal liability upon the grantee to the person holding the lien. (*Comstock* v. *Hitt*, 37 Ill. 542; *Fowler* v. *Fay*, 62 id. 375; Jones on Mortgages, sec. 748.) And we find nothing of such assumption in the written acceptance of the creditors of April 4, wherein they "agree, each with the other, to advance our due proportion of the amount which may be necessary to clear said property from liens and incumbrances." That was not coming under any obligation to any one for the payment of such liens and incumbrances, and was not with any such intent,—it was an agreement, merely, between the creditors themselves as to action with regard to each other, fixing the proportion between themselves of the necessary advances for clearing the property from liens and incumbrances.

The only ground of support which we can find for the theory above, is in the concluding words of the first clause in the proposition of agreement of Prussing of April 4, where, after proposing a conveyance of the premises, subject to all incumbrances and liens now standing of record against the same, it concludes with saying, "and I to be kept harmless from any personal liability for or on account of any suits

or liens against said property to be conveyed." Now, it is
to be marked that this provision of indemnity against per-
sonal liability is not on account of debts incurred in respect
of the property, but it is against personal liability "on
account of any suits or liens *against said property*." The
property was to be taken subject to the liens and incum-
brances upon it, and the situation was, that Prussing's per-
sonal liability in respect to such liens and incumbrances
still existed, which might be enforced against him, and he
be made to pay the liens and incumbrances subject to which
the land was taken, and it was to meet such event that it
was in Prussing's proposition that he should be kept harm-
less from any personal liability for any actual liens and
incumbrances,—not for any simple debt, unaccompanied
with any lien or incumbrance upon the property, although
it may have been incurred in respect of the property. At
the time when this decree was rendered, this indebtedness
in favor of the Wartmans was not a lien upon this land.
It stood as a personal debt, simply, of Prussing, which,
although it was originally incurred in respect of this prop-
erty, there would seem to be no more good reason that these
creditors should pay, than any other mere personal debt of
Prussing which might have been contracted in respect of the
property. Should Prussing himself pay this debt, it would
not be discharging any lien or incumbrance on the land
which the land was taken subject to, which, as we conceive,
forms the only true ground and reason for calling upon the
creditors for payment, upon the proper construction of the
writing. It was not against debts that might be pretended
or claimed to be liens and incumbrances that the creditors
undertook to indemnify Prussing, but against debts which
were, in fact, liens and incumbrances, and nothing more;
and, accordingly, when Prussing comes to make the trust
deed, in pursuance of his proposition there is inserted in it
the provision that the creditors took the property subject to

liens and incumbrances, and by virtue of this, Prussing would have recourse back on the creditors for any liens and incumbrances that he might pay off. The whole meaning would seem to have been, that the creditors took the property subject to the liens and incumbrances on it, and that Prussing was to be kept harmless from any personal liability on claims that were really liens and incumbrances on the land, and which the land might be made to satisfy, and there is nothing carrying the idea that the creditors were to pay any of the personal debts of Prussing which were not, in fact, liens or incumbrances upon the land. In the acceptance of the proposition, in fixing the proportion of the money they are to advance, it is of the amount "necessary to clear said property from liens and incumbrances," excluding the idea that there was to be an advance of money for any other purpose.

It is said that at the time of the making of this proposition of April 4, this suit at law against Prussing to recover upon his personal liability was pending, and it must have been with the intention of embracing that suit that the word "suits" was employed by him in this above quoted language. Even were this so, the construction we have adopted is not inconsistent; but there is no evidence that the creditors knew of such suit, or had it in view, and there is no reason why the language should have any different construction from what it imports on its face,—indemnity against personal liability "on account of any suits or liens *against said property*." We see no reason why there should be any particularly liberal interpretation to give these building contractors the benefit of the security of third persons for the payment of their claim, which it was never in contemplation, in the making of the contract, that they should have, or why there be any strict interpretation against these creditors to render them liable as sureties for the debt of another person, where it was not within the fair intendment of any undertaking of theirs that they should become such. In our opinion the Wart-

mans were not entitled to a decree against these creditors of Prussing, nor was Prussing entitled to a decree against the latter that they should pay the judgment of the Wartmans against him.

The judgment of the Appellate Court will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*

Mr. Justice Mulkey, dissenting:

I do not concur in the opinion of the majority of the court in this case in so far as it holds the creditors of Prussing, under contract of April 4, 1874, are not personally liable to pay the claim of the Wartmans, which at that time was a valid lien upon the State street property. Their undertaking was to keep Prussing harmless from any personal liability on account of any liens against the property,—and this, clearly, could only be done by paying off or obtaining a release of the indebtedness itself. It is manifest that no personal liability attached to Prussing on account of the Wartman lien upon the property, independent of the indebtedness to which the lien related. As the property was to be sold subject to all liens, but for his personal liability on the debts to which the liens related it was a matter of perfect indifference to Prussing whether these liens were ever removed from the property or not; yet, as he was personally liable for these claims, it was very important to him, if such was the understanding, to exact of the purchasers, as he did, indemnity against such personal liability, hence their express undertaking to keep him "harmless from any personal liability for or on account of any suits or liens on said property." Suppose the undertaking of the purchasers had been to keep Prussing harmless from any personal liability on account of the *debts and claims* against the property, instead of liens against the property, I presume no one would question for a moment that this

would be a direct undertaking on their part to pay off these incumbrances, or in some manner relieve him from doing so; and yet, in my judgment, the words actually used are but a different form of expression signifying the same thing. The word "*liens*," as used in the contract in the connection mentioned, is but descriptive of the character of the debts or claims against the property, and for which Prussing, as well as the property, was liable. So far as these claims or liens were an incumbrance upon the property, was a matter, as we have already remarked, of no consequence whatever to Prussing, as, by the very terms of the agreement, the property was sold subject to them, and consequently the sale of it imposed no personal liability on him; but as such sale did not, on the other hand, at all relieve him from his existing personal liability on account of these liens or claims, it was of vital importance to him to have a clause inserted in the contract, as he did, indemnifying him against such personal liability. It seems to me, to give the contract any other construction would be to render the provision in question meaningless, and wholly inoperative.

Nor can the fact that the buildings on the property were subsequently burned down, and that the naked lots were sold and conveyed under a prior mortgage, so as to cut off the Wartman lien on the property, at all affect the right of the Wartmans to be paid the amount of their claim, or the liability of Prussing, or the purchasers of the property from him, to pay it, for although, by reason of the facts stated, the indebtedness ceased to be a lien on the lots, yet the *indebtedness,*—the only thing about which Prussing had the slightest concern,—remained the same. The only effect of the sale under the prior mortgage, so far as the parties to this controversy are concerned, was to destroy one of the marks or characteristics by which the indebtedness was theretofore properly described. Before the sale and conveyance the indebtedness was a lien or a lien indebtedness, yet,

by reason of the sale and conveyance, the descriptive quality of the lien was eliminated from it, but the personal liability of Prussing, with respect to the indebtedness, remained precisely the same as it did before; and it was, as I think I have fully shown, the sole object of the provision of the contract in question to indemnify Prussing against this personal liability,—and this could only be done by payment or release of the indebtedness itself.

I am authorized to say my brothers SCHOLFIELD and DICKEY concur in the views expressed by me in this dissent.