Samuel Mitchell and Cody Trust Company, Appellants,
v. Jack Robinovitz et al., Defendants. Peerling
Marble Company et al., Appellees.

Gen. No. 36,544.

Opinion filed November 21, 1933.

DEFREES, BUCKINGHAM, JONES & HOFFMAN and
FRANK MADDEN, for appellants; VINCENT O'BRIEN and
FRANK MADDEN, of counsel.

A. S. and E. W. FROEHLICH, ALFRED LUBIN, NELSON,
BURTON & QUINDRY and FRANCES E. SPOONER, for ap-
pellees; EDMUND W. FROEHLICH and ALFRED LUBIN, of
counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the
court.

This appeal is prosecuted by complainants to re-
verse a decree of the circuit court of Cook county,
entered December 9, 1932, and amended December 12,
1932, in a foreclosure proceeding, in which the four
cross complainants were mechanics' lien claimants.

The controversy arises over those portions of the amended decree which award to the cross complainants prior liens, over that of the holder of certain bonds secured by the first mortgage, as to the building or improvements on the property.

A bill was filed in the circuit court by Alexander T. Spare and Chicago Title & Trust Co., as trustee, for the foreclosure of· a second mortgage recorded ¡as document No. 9904612. Among the parties made defendants were the four lien claimants, who severally filed intervening petitions or cross-bills seeking a foreclosure of their liens. Subsequently in the same court complainants filed their bill for a *partial* foreclosure of the first mortgage, recorded December 28, 1927, as Document No. 9882519, making said lien claimants and others parties defendants, and they filed answers and cross-bills. Thereafter the two causes were consolidated as *Mitchell et al. v. Robinovitz et al.*, No. B–194087, and the consolidated causes were referred to a master to take proofs and report his conclusions. The master's lengthy report was filed on December 16, 1931. There was also a supplemental report.

The complainant, Mitchell, owned and held certain matured bonds and coupons, secured by the first mortgage, which had not been paid, and the master found what was the amount due to him. The master also found the respective amounts due to said four lien claimants, but recommended that the question of their "right to priority against improvements" be reserved "until after the entry of the decree herein and the sale of the premises." The master also found that numerous other parties had furnished labor and materials in the erection of the building which had enhanced the value of the premises, that some had valid liens and that others had waived their liens, etc. Complainants filed exceptions to the master's report to the effect (a) that he had "failed to find the order of priority of

the liens of various parties upon the premises," and (2) that he had failed to find that the liens of the four lien claimants "are prior *on the improvements* on the property . . . *only* to the extent that *their respective work and labor* had enhanced the value of said improvements." In the decree as amended, which was entered after argument upon the exceptions, it is recited that no exceptions to the master's reports were taken except those of the complainants, and it is ordered that such exceptions be overruled and that the reports of the master be approved and confirmed. And the court found the particular amount that was due to the complainant, Mitchell, as the owner and holder of certain bonds secured by the first mortgage, and also the amounts that were due respectively to said four lien claimants, for which each "has a lien hereinafter more particularly defined." And among other findings of the court are the following:

"8. That by agreement of Edmund W. Froehlich, assignee of the claim of Oscar F. Peterson, and by agreement of the other parties to the cause, said Froehlich stipulates that its priority be found to co-ordinate with that found in favor of Floor-it Company and other liens hereinafter found to be co-ordinate with that of the lien of Floor-it Company.

"9. That to secure the sums, respectively, found due the defendants (naming said four lien claimants), they have, without priority or preference between them, valid and subsisting liens upon said premises, which liens are, *as to the vacant land,* subordinate and inferior to, first, the lien of trust deed Document No. 9882519, hereinafter found, and second, to the lien hereinafter found of trust deed Document No. 9904612, and which liens are, *as to the entire improvement* erected and now standing on said premises prior and superior to the claim and lien on said improvement of

each and every of the remaining parties to this cause, including said 'Unknown Owners.'

"10. That to secure the sums found due Samuel Mitchell, he has a valid and subsisting lien on said premises, including the land and improvements, as to the vacant land only subordinate and inferior, first, to the continuing lien of said trust deed Document No. 9882519, as security for the payment of all bonds and coupons maturing subsequent to December 1, 1930, and of all costs and charges accruing thereunder, and *as to the improvements* on said premises subordinate and inferior only to the liens on said improvements hereinabove found in favor of the defendants (naming said four lien claimants), and to the continuing lien of said trust deed Document No. 9882519, as security for the payment of all bonds and coupons maturing subsequent to December 1, 1930, and to all costs and charges accruing thereunder, but prior to the rights of all other parties to the above entitled cause.''

And the court ordered and decreed *inter alia* that, unless the several amounts found due to Mitchell, and also to said four lien claimants, and also to certain other named parties, are paid to them within 10 days from the date of the entry of this decree, then the said real estate, building, etc. shall be sold at public auction for cash to the highest and best bidder; that the master execute the decree, give notice of the time and place of the sale and give to the purchaser a certificate of sale, recording a duplicate thereof; and that out of the proceeds of the sale the master retain his disbursements and commissions and pay the taxed costs, and hold the entire remainder subject to the further order of the court, "the court hereby expressly reserving jurisdiction *to ascertain the relative value of the land and improvements . . . and to direct distribution accordingly.*''

Counsel for complainants, in urging a reversal or modification of the decree, state in their printed brief and argument here filed the opposing theories of the parties substantially as follows: That complainants' theory is that under section 16 of the Mechanics' Liens Act, Cahill's St. ch. 82, ¶ 16, the lien creditor is preferred as against the prior mortgagee "only as to the value of the improvements erected on the premises *by him* and not to the value of the entire improvement erected by himself and the other contractors"; and that the theory of said four lien claimants is that they are "to be. preferred to the value of the *entire* improvement erected by all contractors and not merely to the value of the particular improvements erected by them." In another part of their brief complainants' counsel state their contention as follows:

"As against a prior mortgagee a contractor is preferred *only* to the value of the improvements erected *by him,* and the mortgagee is preferred to the extent of the value of the land, *including in that term* the enhanced value produced by labor and materials *furnished by other contractors* who have been paid, or who have waived, released or failed within the necessary time to assert their liens."

In section 16 of the present Mechanics' Liens Act, which became in force on July 1, 1903, it is provided in part as follows: (Cahill's St. 1931, ch. 82, ¶ 16, p. 1800):

"No incumbrance upon land, created before or after the making of the contract under the provisions of this act, shall operate upon the building erected, or materials furnished, until a lien in favor of the persons having done work or furnished material shall have been satisfied, and upon questions arising between incumbrancers and lien creditors, all previous incumbrances shall be preferred to the extent of the value of the land at the time of making of the contract, . . .

and the lien creditor shall be preferred to the value of the improvements erected on said premises, . . . and the court shall ascertain by jury or otherwise, as the case may require, what proportion of the proceeds of any sale shall be paid to the several parties in interest. . . .''

It will be noticed that in the section it is provided that no prior incumbrance upon the land ''shall operate upon the building erected or materials furnished, until a lien in favor of the *persons* having *done work* or *furnished material* shall have been satisfied,'' and that ''the lien creditor shall be preferred to the *value* of the *improvements* erected on said premises.'' It will further be noticed that the section does not specifically provide, as complainants' counsel would have it construed, that the lien creditor shall be preferred *only* to the value of the improvements erected *by him* upon the premises. And we have not been cited to any decision of our Supreme Court, or of any of our appellate courts, where the particular construction contended for has been adopted in a case arising since the present section 16 has been in force.

In the case of *Albrecht v. Buelow,* 191 Ill. App. 481, decided in February, 1915, this division of this court had occasion to compare said section 16 with similar provisions in former mechanics' lien acts, and we said (p. 487):

''The above quoted portion of section 16 of the present Act is substantially the same as section 20 of the 'Liens' Act of 1845 (Laws 1845, p. 347), and also substantially the same as section 17 of the 'Liens' Act of 1874 (Hurd's Stat. 1874, p. 667), with the exception that in both of said sections of the prior acts the words contained in the present section 16, included between the asterisks above shown, do not appear. In the 'Mechanic's Liens' Act of 1895 (Laws 1895, p. 232) it was provided in section 16 thereof that the lien creditors should be preferred to the extent that the market

value of the land was 'enhanced' by reason of the improvements, and further that where, after a trust deed or mortgage has been recorded, contracts shall be made for the improvement of the property, and the owner shall pay for labor or material in such improvement, 'the enhanced value thereby given shall be treated as a fund in which the mortgagee and lienholder shall participate *pro rata.*' When the present new act was passed in 1903 the said sections of the Acts of 1845 and 1874 were substantially re-enacted with the addition of said clause, 'and the lien creditor shall be preferred to the *value* of the improvements erected on said premises.' "

In *Raymond v. Ewing,* 26 Ill. 329, decided in 1861, the court says (p. 343):

"The deed of trust constituted a first lien upon the premises, and improvements thereon at the time the trust deed was recorded; but the statute gives the mechanics and material men liens, paramount to the trust deed, upon the improvements made by them upon the premises, and the court should have ascertained, by reference or otherwise, the *value* of *these improvements* as compared with the whole value of the premises, and given to the petitioners in the lien suit their due proportion of the proceeds of the premises, according to the provisions of the statute."

In *North Presbyterian Church of Chicago v. Jevne,* 32 Ill. 214, decided in 1863, it appears that Jevne and others filed separate petitions claiming mechanics' liens on the premises for labor and materials severally furnished in the erection of the church edifice; that these petitions were consolidated in one proceeding; that the church, being the owner of other lots exchanged them for the lots in controversy, and, in order to erect the proposed edifice thereon, was compelled to borrow $12,000; that accordingly the church mortgaged the premises to one Lee, for a loan made by him

of $12,000, and a conveyance was made to one Munger; that thereafter in the construction of the edifice about $20,000 in cash was paid out for labor and materials to various workmen and material men, including partial payments made to petitioners; that it was insisted by defendants that "the value paid on the work and materials ought to be added to the naked value of the lots, in favor of defendant, Lee, in the distribution of the proceeds of the sale of the premises"; and that a decree was entered in favor of the petitioners. In reversing the decree because of certain errors therein and remanding the cause for further proceedings, the Supreme Court, after referring to various sections of the then existing "Liens" Act, including section 20 thereof, said (p. 220):

"It will be seen that the mortgagee had a first lien upon the lots, to the full extent of their value, if required to pay his debt. He also had a subsequent lien on the building, subject to the first lien of the workmen thereon. They in like manner had a prior lien on the edifice, and a subsequent lien on the lots. These were the rights, and this was the relation of the parties. Each had a right to have his debt satisfied *out of the fund* upon which he had a first lien; and if it was not sufficient, out of any surplus that might remain after satisfying that lien.

"The court should therefore have, by a jury or master, ascertained the separate value of the lots, and of the building, and upon it decreed the payment of the several claims. By it the court should have ordered the payment of the mortgage out of the *proportion of the fund* arising from the lots, and the mechanics out of that arising from the building. If the lots were three-tenths of the value of the entire property, then that proportion of the money should be applied to the payment of the mortgage, and the other seven-tenths to the payment of the lien of the mechanics. If the

whole of either fund were not necessary to pay the lien upon it, that lien should be paid in full, and then, if necessary, the surplus of that fund should be applied to the unpaid portion of the lien on the other fund. And if any surplus remained after paying all the claim, it would be paid to the owners.''

Other subsequent cases decided by our Supreme Court, wherein the holdings in *Raymond v. Ewing, supra,* and *Presbyterian Church v. Jevne, supra,* are substantially followed, are *Croskey v. Northwestern Mfg. Co.* (1868), 48 Ill. 481, 484, 485; *Howett v. Selby* (1870), 54 Ill. 151, 152; *Wing v. Carr* (1877), 86 Ill. 347, 351; *Grundeis v. Hartwell* (1878), 90 Ill. 324, 326; *Bradley v. Simpson* (1879), 93 Ill. 93, 95, 96; and *Condict v. Flower* (1883), 106 Ill. 105, 119.

The one Illinois case, relied upon by complainants' counsel to sustain their theory or contention, is that of *Clark v. Moore,* 64 Ill. 273, in which the decree under review was entered in the circuit court of LaSalle county in 1870. It appears from the opinion (p. 282) that one of the contentions urged for a reversal of the decree was that ''the court erred in preferring the lien of the mortgages in that portion of the improvements which were paid for by Wells (the owner), whilst erecting and completing the building, to the material-men,'' and that in the decree the court had found ''that the property was worth, before the improvements were made, the sum of $3,500; that appellees and appellants contributed about $14,000 in materials to the building and machinery; and that Wells, the owner, paid about $9,000 for the improvements placed on the property.'' In discussing the particular contention and deciding against it, the court, after referring to the pertinent existing statute and citing with approval the holdings in the prior *Jevne, Croskey* and *Howett* cases, *supra,* said (pp. 282, 283, italics ours):

"But where, as in this case, there is a large proportion of the enhanced value of the property produced *by the owner paying for labor and material furnished by others* than the parties to the suit, the question arises whether the mechanics and material-men shall have it appropriated to the payment of their liens, or shall it be applied to the prior incumbrances, or shall it be treated as a fund in which both may participate *pro rata*. In such a case, the enhanced value *produced by the payment of money by the owner,* whilst the work was progressing, *should be applied to the satisfaction of the mortgages on the property;* and if any portion of the fund thus created shall remain, to be applied to the satisfaction of the liens for labor and materials."

We have been unable to find that these particular holdings in *Clark v. Moore* have been followed, discussed or distinguished in any subsequent decision of our Supreme Court. However, it is our opinion that the holdings should not be considered as sustaining complainants' counsels' contention, above mentioned. They are based on the fact that the owner, Wells, had paid out large sums of money "for labor and material furnished by others than the parties to the suit." In the record in the present case we fail to find evidence of the owner of the premises involved making such payments. And while the present record discloses that material men, other than said four lien claimants, waived, released or failed within the necessary time to assert their liens, we are further of the opinion that counsels' said contention is contrary to the provisions of section 16 of the present Act and also contrary to numerous decisions in this State, above referred to, construing similar provisions in prior acts.

As to certain British Columbia and Saskatchewan decisions, also cited by complainants' counsel in support of their contention, we do not think they are persuasive as the statutes upon which they are based

424

are somewhat different from our present statute, and we believe said decisions to be contrary to the current of authority in this State.

Our conclusion is that the circuit court did not err in entering the decree of December 9, 1932, as amended, and, accordingly, the same is affirmed.

*Affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.