Nellie Albrecht and Moses E. Greenebaum, Trustee, Appellees, v. Sophie Buelow et al., on appeal of Ferdinand Becker, Appellant.

Gen. No. 20,314.

1. MECHANICS' LIENS, § 128*—*apportionment of liens*. Mechanics' Liens Act, 1903, sec. 16 (Hurd's R. S., ch. 82, sec. 30, J. & A. ¶ 7154), relative to incumbrances and apportionment of liens, *held* not to differ materially from the Statute of 1845, sec. 20.

2. MECHANICS' LIENS, § 131*—*practice for distribution of proceeds*. In a foreclosure proceeding where, after it has been determined that a mechanic has a lien and in what amount, and that his lien is superior to the lien of the mortgage or trust deed as to a portion of the premises as improved, it is not necessary, though proper, for the court to determine before entering a decree of sale what proportion of the proceeds of the sale shall be paid to the lien holder and what to the mortgagee or trustee, since the court may order the proceeds of the sale to be brought in and the proper proportions may be ascertained by taking of evidence after the sale, and the taking of this evidence may be unnecessary where the property sells for enough to satisfy both liens.

3. MECHANICS' LIENS, § 128*—*distribution in case of prior incumbrances*. In foreclosure of a trust deed, where a cross-complainant asked that he be decreed a superior lien for material furnished upon premises subsequent to the execution of the trust deed, and it appeared that such claimant had increased the value of the building in excess of the amount claimed as a lien for materials furnished, a decree, upon the recommendation of the master, entering an order of sale, finding that complainant had a "first and prior lien" on the premises for the amount due under the notes and trust deed and was "first entitled to be paid the same" out of the proceeds of the sale, and a further finding that the cross-complainant had a lien on the premises in a certain sum, subject to the lien of the complainant, and was next entitled to be paid such sum out of the proceeds, *held* erroneous since the cross-complainant had a lien paramount to that of complainant on the premises to the extent of the additional value given to said premises by improvements or repairs made by him under the Mechanics' Liens Act, 1903, sec. 16 (Hurd's R. S. ch. 82, sec. 30, J. & A. ¶ 7154).

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

4. Mechanics' liens, § 130*—*burden of apportionment.* Where after a sale of premises under foreclosure it is found that the net proceeds were not sufficient to satisfy both the liens of the complainant under a trust deed and that of a cross-complainant under a mechanic's lien, and it becomes necessary to take further evidence to ascertain the proper proportionate amount of such proceeds to which each party is entitled, the burden of showing what amount of the proceeds the cross-complainant is first entitled to be paid upon his prior lien is upon cross-complainant, since the complainant's lien is first in point of time.

Appeal from the Superior Court of Cook county; the Hon. Charles M. Foell, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Reversed and remanded. Opinion filed February 24, 1915.

**Statement by the Court.** On August 20, 1913, the complainants, Nellie Albrecht and Moses E. Greenebaum, trustee, filed their bill of complaint against Sophie Buèlow and others to foreclose a trust deed on certain premises in Cook county owned by Mrs. Buelow, which trust deed was executed and recorded in the year 1909. The defendant, Ferdinand Becker, answered the bill and also filed a cross-bill, in which he claimed a mechanic's lien for a balance due of $20 for certain roofing materials furnished by him to and upon the dwelling house on said premises in the year 1912, and prayed that he be decreed a lien upon the premises, superior to complainants' lien. The complainants in their answer to the cross-bill denied that Becker's alleged lien was superior to the lien of said trust deed. The cause was referred to a master in chancery to take proofs and report the same together with his conclusions thereon.

On the hearing before the master it was shown that there was due the complainant, Nellie Albrecht, as the legal holder of one principal note and certain interest notes, secured by said trust deed, the sum of $993.69 and also the sum of $75 as reasonable solicitor's fees.

On behalf of the cross-complainant, Becker, it was shown that, in pursuance of a written contract made with the owner of said premises on May 11, 1912, Becker agreed to furnish said roofing materials to and upon the building on the premises for the sum of $42; that he had furnished the same and fully performed his contract on or about May 13, 1912, and had been paid thereon the sum of $22, and that there was still due him a balance of $20; and that in apt time he had filed with the clerk of the Circuit Court of Cook county a statement of his claim for a lien and had paid the sum of $1 as a filing fee. One of the witnesses called on behalf of said cross-complainant testified that the putting of said roofing materials on said house enhanced the value of said premises to the extent of $200. No further evidence on this point was offered by either party.

The master in his report found that there was due and unpaid to the complainant, Nellie Albrecht, the sum of $993.69, and also the sum of $75 for solicitor's fees. He also found that Becker was entitled to a lien upon the premises for the balance of $20, together with the further sum of $1 for filing said statement of claim for lien, but that "such lien is second and subsequent to the lien of the complainant, Nellie Albrecht." As reasons for this last-mentioned finding he stated in his report that "upon the hearing testimony was offered on behalf of said cross-complainant that the roof placed on said house by said cross-complainant improved or increased the value of the premises in question to the extent of $200, but no evidence was offered as to the value of said premises before said roof was applied, nor as to the value of said premises after said roof was applied, so that there is no basis in this record upon which any percentage of increase can be figured." The master further found that all material allegations of complainant's bill of complaint had been proven and

were true, and that she was entitled to the relief prayed therein. He recommended that the usual decree of foreclosure be entered in accordance with the prayer of said bill and his findings.

The cross-complainant, Becker, filed objections to the report of the master, among which are (a) that the master has found that the lien of the cross-complainant is second and subsequent to the lien of the complainant; (b) that he found that "there is no basis in this record upon which any increase can be figured," thereby, in connection with his other findings, "placing upon this cross-complainant the burden of proving to what extent the complainant's lien is a first lien, when as a matter of law the burden of proof thereof was on the complainant, and when such proof may be made after sale and prior to distribution"; and (c) that he failed and refused to find that the lien of this cross-complainant is a first lien on the improvements (superior to the lien of the complainant) "to the extent of the increased value of the improvements, caused by the labor and materials furnished by cross-complainant on said premises." The objections were overruled by the master, and after the report had been filed in court the objections were ordered to stand as exceptions.

On December 23, 1913, the court entered a decree of sale, overruling the exceptions and approving the master's report and finding that there was due the complainant, Nellie Albrecht, upon said notes and under and by virtue of the terms of said trust deed, the sum of $993.69, and also the further sum of $75 for solicitor's fees, or the total sum of $1,068.69; that she had "a first and prior lien" for said sum upon said premises, and was "first entitled to be paid the same," together with interest thereon except as to said solicitor's fees, "out of the proceeds of any sale of said premises"; that there was due said cross-complainant, Becker, the sum of $21; that he had a lien for said sum

upon the premises, subject to the lien of said complainant, and was next entitled to be paid said sum, together with interest, out of the proceeds of any sale of the premises; and the court ordered and decreed that unless the defendant, Sophie Buelow, or some of the defendants, within two days pay or cause to be paid the complainant the said sum of $1,068.69, interest and costs, the premises be sold by the master in the usual manner, and that the master, out of the proceeds of the sale, retain his fees, etc., pay the costs, and out of the remainder pay complainant the amount found to be due her, together with interest except as to said solicitor's fees, and if such remainder be not sufficient to pay said amount and interest that he apply the same to the extent to which it may reach in satisfaction thereof, and report the amount of the deficiency, and if the remainder be more than sufficient to pay said amount and interest that he hold the surplus subject to the further order of the court, etc.  To the entry of this decree the cross-complainant, Becker, immediately prayed and was allowed an appeal and the same was subsequently duly perfected.

P. R. Barnes, for appellant; W. P. Quinby, of counsel.

Joseph G. Straus, for appellees.

Mr. Justice Gridley delivered the opinion of the court.

The cross-complainant, Becker, seeks by this appeal to reverse the decree and, in substance, assigns as errors that the court erred (1) in overruling the exceptions to and approving the master's report; (2) in finding that complainant had a first and prior lien for the sum found due her, and was first entitled to be paid

out of the proceeds of any sale of the premises, and that Becker's lien was subject to her lien; (3) in not finding that Becker had a first and superior lien upon the improvements on said premises, for the sum found due him, "to the extent of the increased value of such improvements" caused by the labor and materials furnished by him; (4) in decreeing distribution of the proceeds of sale before the court could ascertain whether or not such proceeds would be sufficient to pay the liens of both complainant and cross-complainant in full; and (5) in not decreeing a sale of the premises without distribution until the further order of the court and directing the master to report the proceeds of the sale to the court. It is contended that upon the coming in of such report, if it was found that such proceeds were sufficient to pay both liens in full, the court should order the proper distribution of the proceeds; that if it was found that such proceeds were not sufficient to pay both of said liens in full, the court should refer the cause back to the master to take proofs as to the value of the land at the time of the making of cross-complainant's said contract with the owner of the land, and as to the value of the land after the making of the improvements by said cross-complainant thereon, and to report his recommendations as to the proper proportionate amounts of such proceeds to be paid to complainant and cross-complainant respectively.

Section 16 of the present Mechanics' Liens Act, in force July 1, 1903 (J. & A. ¶ 7154), provides in part as follows:

"No incumbrance upon land, created before or after the making of the contract under the provisions of this act, shall operate upon the building erected, or materials furnished until a lien in favor of the persons having done work or furnished material shall have been satisfied, and upon questions arising between incumbrancers and lien creditors, all previous incumbrances shall be preferred to the extent of the value of the land

at the time of making the contract, * and the lien creditor *shall* be preferred to the value of the improvements erected on said premises, * and the court shall ascertain by jury or otherwise, as the case may require, what proportion of the proceeds of any sale shall be paid to the several parties in interest.''

The above quoted proportion of section 16 of the present Act is substantially the same as section 20 of the ''Liens'' Act of 1845, and also substantially the same as section 17 of the ''Liens'' Act of 1874, with the exception that in both of said sections of the prior acts the words contained in the present section 16, included between the asterisks above shown, do not appear. In the ''Mechanics' Liens'' Act of 1895 it was provided in section 16 thereof that the lien creditors should be preferred to the extent that the market value of the land was ''enhanced'' by reason of the improvements, and further that where, after a trust deed or mortgage has been recorded, contracts shall be made for the improvement of the property, and the owner shall pay for labor or material in such improvement, ''the enhanced value thereby given shall be treated as a fund in which the mortgagee and lien-holder shall participate *pro rata.*'' When the present new Act was passed in 1903 the said sections of the Acts of 1845 and 1874 were substantially re-enacted with the addition of the said clause, ''and the lien creditor *shall* be preferred to the *value* of the improvements erected on said premises.''

In the case of *Raymond v. Ewing,* 26 Ill. 329, 343, decided in 1861, it is said: ''The deed of trust constituted a first lien upon the premises, and improvements thereon at the time the trust deed was recorded; but the statute gives the mechanics and material men liens, paramount to the trust deed, upon the improvements made by them upon the premises, and the court should have ascertained, by reference or otherwise, *the value of these improvements* as compared with the *whole value* of the premises, and given to the petitioners

in the lien suit their *due proportion of the proceeds* of the premises, according to the provisions of the statute." In the case of *Smith v. Moore,* 26 Ill. 392, 396, our Supreme Court, speaking of section 20 of the Act of 1845, said that under the section the prior incumbrancer "must look alone to the property as it was, before the mechanic's or material man's lien attached, and they must look to the improvement or materials, *unless the proceeds of the sale is sufficient to satisfy both,* or there is a surplus of either fund, which, if necessary, may be applied to the satisfaction of the other lien." See, also, *North Presbyterian Church v. Jevne,* 32 Ill. 214, 220.

In the case of *Croskey v. Northwestern Mfg. Co.,* 48 Ill. 481, decided in 1868, the above mentioned cases were cited with approval. In this *Croskey* case, a petition to establish a mechanic's lien was filed against Croskey, as the owner of the fee, and certain other parties as mortgagees. A decree was rendered, directing a sale of the premises and establishing the relative order of the liens. The decree provided, *inter alia,* that the master should take testimony and report to the court the relative value of the land and improvements, and should bring the proceeds of the sale into court, to be distributed according to the respective priorities of the liens, the court first determing the relative value of the lands and the improvements. The court said (p. 483): "By the term 'land,' in this section of the statute, must, of course, be meant the land with such improvements as there are upon it at the time of the execution of the mortgage. If, for example, the owner of unencumbered realty, with a building upon it, executes a mortgage thereon, and afterwards has *repairs* made upon the building, for which a mechanic's lien is enforced, such lien would take priority over the mortgage *only to the extent* of the *additional value* given to the property by the improvements. Thus, if, to a house and lot worth $15,000, and subject to a mort-

gage, additions or improvements are made by the mort-
gagor in such mode as to make the premises worth
$18,000, the mechanics and material men engaged in
making these improvements would have a prior lien to
the extent of three-eighteenths of the proceeds of the
sale, and the *increased market value* added to the prop-
erty would measure the extent of the priority of their
lien, without reference to the cost of the materials or
labor actually furnished.''. The Court goes on to say
that the lower court, in the decree of sale, had, prob-
ably from inadvertance, given the lien claimants a
prior lien upon all the buildings and improvements
upon the lot, although it was quite evident from the
bill that the materials had been furnished for the im-
provement of a building already upon the ground. It
also appears from the opinion that the decree of sale
in said *Croskey* case, after thus establishing the
extent of the lien, directed the master to make the sale,
*and* to take evidence and report to the court the com-
parative value of the land and the improvements at the
time of the sale. It further appears that it was con-
tended that this evidence should have been taken *before*
*rendering the decree of sale,* but the court said (p.
484): ''We see no good reason for not allowing the
master to take the evidence *after the sale,* and on some
accounts the inquiry at that time would be more satis-
factory.'' The court further said that the decree of
sale was faulty ''in not determining the relative prior-
ity of the liens, with reference to the improvements,
with more precision. The court should have ascer-
tained at what time the improvements were commenced
for which the materials of complainants were furnished,
and should have given to the prior mortgagees a para-
mount lien on the property as it stood when such im-
provements were commenced, and to the complainants
a paramount lien on the improvements towards which
they furnished materials, and should have directed the
master to inquire into the comparative value of the

property before and after the improvements were made.'' In the case of *Howett v. Selby*, 54 Ill. 151, decided in 1870, Hall, the owner of certain premises, made improvements thereon, and various mechanics' liens attached therefor, and proceedings were commenced to enforce these liens, Howett, a prior mortgagee, being made a party defendant. Howett set up his mortgage in a cross-bill. The lower court, after hearing the proofs, found that seven twenty-fifths of the present value of the premises was the *increased* value on account of the improvements, for which the liens attached, since the execution of the mortgage; and the court decreed that the premises be sold, and that eighteen twenty-fifths of the proceeds of the sale be first applied in payment of the mortgage, and that seven twenty-fifths of the proceeds be applied in payment of said liens, and that any surplus of said seven twenty-fifths of said proceeds, after discharging said liens, be applied, first, on any balance due on said mortgage, and the remainder, if any, be paid to the owner, Hall. The decree was affirmed.

It thus appears from these cases that, under section 20 of the Act of 1845, where the owner of land improved by a building thereon, which are incumbered by a mortgage, has improvements or repairs made upon the building for which a mechanic's lien is enforced, such lien is paramount to the lien of the mortgage to the extent of the increased value of the premises by reason of the improvements or repairs. And it also appears from these cases that, after it has been determined that the mechanic has a lien, and in what amount, and that his lien is superior to the lien of the mortgage as to a portion of the premises as improved, it is not necessary, though proper, for the court to determine, before entering a decree of sale, what proportion of the proceeds of the sale shall be paid to the lien holder and what to the prior mortgagee. The

proper proportion may be ascertained by the taking of evidence after the sale. And the taking of this evidence may be unnecessary, where the property sells for enough to satisfy the lien of the mortgagee and that of the mechanic in full. Inasmuch as section 16 of the present Act does not differ materially from section 20 of the Act of 1845, we think that these rulings are applicable to the present act.

In the case of *Grundeis v. Hartwell,* 90 Ill. 324, decided after the Act of 1874 was passed, a petition was filed by Hartwell to enforce a mechanic's lien for materials furnished for the erection of a building on a lot owned by Albert and Augustus Grundeis. Rose Forrester held a first mortgage for $15,000, and Christiana Grundeis a second mortgage for $20,000, on the lot, and they were made parties. Each of these mortgages was a lien upon the lot before the building was erected and before the materials were furnished by Hartwell. In the decree of sale the lower court found the value of the building, but did not find the value of the lot and failed to determine the proportion of the proceeds of the sale to which the parties were entitled, and decreed that out of the proceeds of the sale the master should pay, *first,* petitioner the *whole* amount of his claim, and *then* pay the claim of Rose Forrester, and *lastly,* the claim of Christiana Grundeis. The Supreme Court held that this was error and reversed the decree and remanded the cause for further proceedings.

In the present case, it appears from the uncontradicted evidence that the roofing materials, furnished the building by the cross-complainant, Becker, had increased the value of the premises to the extent of $200, and that he was entitled to a mechanic's lien on said premises for the sum of $21. Yet the court, on the recommendation of the master, entered a decree of sale finding that complainant had a "first and prior lien" on the premises for the amount found due under the notes and trust deed, and was "*first* entitled to be paid

the same'' out of the proceeds of the sale, and further finding that said cross-complainant had a lien on the premises for said sum of $21, *subject* to the lien of complainant, and was *next* entitled to be paid said sum out of said proceeds. And the court, doubtless through inadvertence, decreed that unless the defendant, Sophie Buelow, or some of the defendants, within two days, paid complainant the sum found due her, together with interest and costs (no mention being made as to paying cross-complainant the sum found due him) the premises be sold in the usual manner, and further decreed that the master out of the proceeds should first retain his fees and pay the costs, and out of the remainder should pay *complainant* the amount found due her, or so much thereof as the remainder of the proceeds allowed, and that if said remainder was more than sufficient to pay complainant (no mention being made of cross-complainant) the master should hold the surplus subject to the court's further order. The effect of this decree was that in case the premises did not sell for more than enough to satisfy the costs, fees and expenses and the sum so found due complainant in full, the cross-complainant would receive nothing, although, as appears from the evidence and by virtue of the provisions of the statute as construed by the courts, he had a paramount lien to that of complainant on the premises to the extent of the additional value given to said premises by the improvements or repairs made by him, and was first entitled to be paid, out of the net proceeds of the sale, a small amount. ''The proceeds of the sale represent and stand in the place of the land and the building, and the parties have the same proportionate interest in the proceeds that they had in the property before it was sold.'' *Bradley v. Simpson,* 93 Ill. 93, 95.

We are of the opinion that the court erred in entering the decree appealed from. We think that in this case the court should have ordered a sale of the premises by the master and directed the master to bring the

proceeds of the sale into court, and that, after this was done, if it appeared that the net proceeds of the sale were not sufficient to satisfy in full the amount found due complainant and cross-complainant, the court should have ascertained, by reference or otherwise, the proper proportionate share of each in said net proceeds, and decreed distribution accordingly.

It is contended, in substance, by counsel for complainant that, because on the hearing before the master cross-complainant, after proving that he was entitled to a lien on the premises in the amount 'of $21, and after showing that the improvements or repairs put by him on the building increased the value of the premises to the extent of $200, did not go further and show the value of the premises both before and after the making of said improvements or repairs, and thereby disclose to the master a basis upon which could be figured the proportionate amount, to which cross-complainant would be entitled, of the proceeds of the sale of the premises, in case said proceeds would not be sufficient to satisfy the liens of both complainant and cross-complainant, the master was justified in recommending, and the court in decreeing, that complainant was first entitled to have paid to her in full the amount found due her under said notes and trust deed. In view of the opinion in the *Croskey* case, *supra,* we do not think there is merit in the contention.

If, after a sale is made of the premises here in question, it is found that the net proceeds thereof are not sufficient to satisfy both the lien of the complainant and that of the cross-complainant, and it becomes necessary to take further evidence to ascertain the proper proportionate amounts of said proceeds to which each party is entitled, we are of the opinion that complainant's lien being first in point of time, the burden of showing what amount of the proceeds cross-complainant is first entitled to be paid is upon the cross-complainant. See Farson's Mechanics' Lien Law 1902, sec. 121, p. 146.

494    APPELLATE COURTS OF ILLINOIS.

The decree of the Superior Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*