Docket No.109954.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

LaSALLE BANK NATIONAL ASSOCIATION, Appellant, v. CYPRESS CREEK 1, LP (Edon Construction *et al.*, Appellees).

*Opinion filed February 25, 2011.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Thomas, Karmeier, and Theis concurred in the judgment and opinion.

Justice Freeman dissented, with opinion, joined by Justice Burke.

## OPINION

The issue in this case is how to distribute foreclosure sale proceeds between a mortgagee and mechanics lien claimants when the mortgage predated the liens, the foreclosure sale proceeds are insufficient to satisfy all claims, and the mortgagee has paid for several improvements to the property through construction loan disbursements under section 16 of the Mechanics Lien Act. 770 ILCS 60/16 (West 2006). The circuit court of Will County subrogated the mortgagee and gave it priority with respect to those improvements for which it paid and gave the mechanics lien claimants priority with respect to the value of their individual improvements. The appellate court reversed, holding that the mortgagee was entitled to subrogation

for payment of perfected mechanics liens, but that the value of those improvements paid for by the mortgagee where no lien was filed and perfected was to be first applied to the satisfaction of the mechanics liens. 398 Ill. App. 3d 592, 600. For the following reasons, we reverse the appellate court on this point and hold that the value of the foreclosed property that is attributable to those improvements paid for by the mortgagee should be applied first toward the satisfaction of the mortgage.

BACKGROUND

LaSalle Bank loaned $8,018,151 to Cypress Creek, LLP, for the development of 13.79 acres of land in Bollingbrook, Illinois, into senior apartments. The loan was secured by a mortgage and security agreement, which were recorded on June 13, 2003. Construction began on the development and Cypress hired appellees, Eagle Concrete and Edon Construction, to perform work on the development. LaSalle funded a total of eight construction draws before June 2005, when it determined that there was no longer enough money in the trust to complete the project. In July 2005, LaSalle filed to foreclose on the mortgage. The following November, Eagle and Edon recorded mechanics liens for $63,478 and $285,825.80, respectively.

In April 2006, a judgment of foreclosure and sale was entered against Cypress. The trial court found that the balance due on the mortgage totaled $8,621,110. The order of judgment was subsequently amended to reflect payment of $5,577,540, leaving an amount due on the mortgage of $3,043,570. LaSalle bought the property at a sheriff's sale in May 2006 for $1.3 million. Edon and Eagle filed to foreclose their mechanics liens and their actions were consolidated with the mortgage foreclosure proceeding.

In September 2007, a trial was held to determine the priority of lienholders and to distribute the proceeds of the sheriff's sale. At trial, Edon, Eagle, and three other mechanics lien claimants argued for priority of their liens over the mortgage. The court heard testimony that, through the loan disbursements, LaSalle paid $99,917 in engineering costs, $2,842.50 for environmental reports, and $8,538 for utilities. LaSalle also paid $30,000 to Basic Development in

satisfaction of their lien, which predated the mortgage by one month. In an order dated October 30, 2007, the court found that the value of the land before any improvements were made was $1,360,000, or 40% of the total value of the property, and that the value of enhancements, including those paid for by LaSalle, totaled $2,068,699, or 60% of the total value. Based on these findings, the court determined that 40% of the proceeds of the sheriff's sale should go to the mortgagee in satisfaction of the mortgage and the remaining 60% should be divided among those who had improved the land. The court conducted a proportionality analysis and allocated sale proceeds according to the following table:

Expense of sale: $1,542
Receiver's fees and expenses: $746,244

Remaining proceeds ($552,214):
    Value attributable to land: $215,100
    Value attributable to all improvements: $331,328.40

The court applied the $215,100 attributable to the land toward the satisfaction of the mortgage and subrogated LaSalle Bank to the amounts it paid for construction costs, engineering costs, environmental reports, and utilities, as well as the amount it paid toward the satisfaction of Basic Development's perfected lien. It then found the proportion of the total value of the improvements to which each party was entitled by dividing the value of each party's improvements by the total value of the improvements, $2,068,699. The court concluded that Eagle's lien for $63,478 accounted for approximately 3% of the value of the improvements and Edon's lien for $285,827 accounted for approximately 15%. LaSalle was entitled to credit for 76% of the value of the improvements, and the three other lienholders, with liens amounting to a total of $131,629, were credited with a total of 5.8% of the improvements. The court therefore awarded $50,000 and $7,300 to Edon and Eagle, respectively. LaSalle was subrogated to $256,514 for the improvements it funded and the remaining lienholders were awarded a total of $20,300. In total, LaSalle was awarded $471,614, with

-3-

$215,100 attributable to the value of the land before any improvements were made and $256,614 attributable to those improvements it funded. Edon and Eagle filed motions for modification of judgment, which were denied in January 2008.

Edon appealed the allocation of sale proceeds and Eagle joined the appeal. Edon and Eagle first argued that the mechanics lien claimants have full priority over a mortgagee under section 16 of the Mechanics Lien Act and that, therefore, the trial court should have satisfied their liens in total before disbursing any funds to LaSalle as mortgagee. 398 Ill. App. 3d at 596. They also argued that the trial court erred in subrogating LaSalle to the status of a mechanics lien claimant for amounts it paid for lienable work. *Id*. at 596-97. LaSalle cross-appealed the trial court's denial of its request for attorney fees. *Id*. at 594. The appellate court, with majority, concurring, and dissenting opinions, affirmed LaSalle's priority as mortgagee to those foreclosure sale proceeds attributable to unimproved land *(id*. at 598), but reversed the trial court's subrogation ruling, holding that LaSalle was only entitled to be subrogated to the extent that it paid perfected mechanics liens (*id*. at 600). The court therefore ordered that the remaining construction and development costs to which the trial court subrogated the bank be allocated proportionally between the mechanics lien claimants. *Id*. The appellate court also reversed the trial court's denial of LaSalle's request for attorney fees. *Id*. at 601.

LaSalle filed a petition for rehearing on the subrogation ruling and the application of that ruling to the three lien claimants which had not appealed the trial court's decision. The petition was granted and, on January 15, 2010, the appellate court filed its second opinion with majority, concurring, and dissenting opinions. The court retained its ruling on the subrogation issue, but ordered that the value attributable to the improvements paid with loan disbursements be allocated proportionally only between the two appellants, Edon and Eagle.

This court granted LaSalle's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

ANALYSIS

The issue before this court concerns the apportionment of

-4-

foreclosure sale proceeds as between a mortgagee and mechanics lien claimants when the proceeds are insufficient to satisfy the mortgage and the mechanics liens. Apportionment is governed in this situation by section 16 of the Mechanics Lien Act (770 ILCS 60/16 (West 2006)). Questions of statutory construction are questions of law and reviewed *de novo*. *People v. Perry*, 224 Ill. 2d 312, 324 (2007).

In matters of statutory construction, we endeavor to "ascertain and give effect to legislative intent." *Id*. at 323. We first must look to the plain language of the statute as the best indicator of legislative intent, considering the statute in its entirety. *Id*. Where the language is clear and unambiguous, we will apply it as written. *Id*. Only where the language is ambiguous do we resort to extrinsic aids to determine legislative intent. *Id*. at 323-24.

Plain Language

The Mechanics Lien Act affords some protection to contractors who contribute labor or materials to a construction project or who provide services such as an architect or engineer by giving them a lien on the subject property. 770 ILCS 60/1 (West 2006). The Act modifies the common law first-in-time, first-in-right rule (see 27A Ill. L. and Prac. *Mortgages* §50 (2003)) by affording lienholders partial priority over pre-existing mortgages when the proceeds of a foreclosure sale are insufficient to satisfy all claims:

> "No incumbrance upon land, created before or after the making of the contract under the provisions of this act, shall operate upon the building erected, or materials furnished until a lien in favor of the persons having done work or furnished material shall have been satisfied, and upon questions arising between incumbrancers and lien creditors, all previous incumbrances shall be preferred to the extent of the value of the land at the time of making of the contract, and the lien creditor shall be preferred to the value of the improvements erected on said premises, and the court shall ascertain by jury or otherwise, as the case may require, what proportion of the proceeds of any sale shall be paid to the several parties in interest. All incumbrances, whether by mortgage, judgment or otherwise, charged and shown to be fraudulent, in respect to

creditors, may be set aside by the court, and the premises freed and discharged from such fraudulent incumbrance." 770 ILCS 60/16 (West 2006).

Historically, this provision has been interpreted by the appellate court to give each mechanics lien claimant priority only to the extent of the increased value of the property due to *that claimant's* improvements on the property. See, *e.g.*, *Commercial Mortgage & Finance Co. v. Woodcock Construction Co.*, 51 Ill. App. 2d 61, 64-65 (2d Dist. 1964); *Moulding-Brownell Corp. v. E.C. Delfosse Construction Co.*, 304 Ill. App. 491, 500 (1st Dist. 1940). Edon and Eagle urge us to adopt the Third District's decision in this case and hold that section 16 of the Mechanics Lien Act entitles mechanics lien claimants to be preferred to the added value of *all* lienable improvements on the land made subsequent to the time the mortgage was entered into. The mortgagee, then, would be entitled to priority only with respect to the value of the land at the time the mortgage was contracted and, through subrogation, to the value of any improvements made by perfected lienholders paid by the mortgagee.

With respect to priority determinations, section 16 directs that

"upon questions arising between incumbrancers and lien creditors, all previous incumbrances shall be preferred to the extent of the value of the land at the time of making of the contract, and the lien creditor shall be preferred to the value of the improvements erected on said premises ***." 770 ILCS 60/16 (West 2006).

Eagle argues that, by creating two groups, lien creditors and incumbrancers, and subsequently giving the "lien creditor," singular, priority with respect to the value of "improvements," plural, that the statute unambiguously gives as few as one lien creditor preference to the value of all improvements erected on the premises after the date that the mortgage attached. We disagree.

First, "the time of making the contract" must be understood in the context of the entire statute. The language here does not refer to the date the mortgage is entered into, but rather the time when the lien creditors in question entered into their contracts with the property owner. This is evident from the beginning of the section, which refers to an encumbrance "created before or after the making of the contract

-6-

under the provisions of this act," clearly referring to the contracting for the provision of lienable services and materials. 770 ILCS 60/16 (West 2006).

Further, the use of "improvements" in the plural simply acknowledges that a single lienholder could have made multiple improvements that, combined, give rise to the lien creditor's claim. The phrase "the lien creditor shall be preferred to the value of the improvements erected on said premises" must also be understood in context. Because prior incumbrancers have priority with respect to any improvements on the land which predate the lien claimant's contract, "improvements" cannot mean *all* improvements. Additionally, because the statute acknowledges the possibility of multiple lien claimants, it is only logical that each claimant would have priority with respect to his own improvements. "A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more different ways." *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395-96 (2003). We find this statute clearly and unambiguously prioritizes lien creditors only to the value of their improvements and the prior incumbrancer to the value of the land at the time the contract with the lien holder was made. We note, however, that our reading today is consistent with prior case law as well as the purposes of the Act and the practicalities of construction lending.

The History of the Mechanics Lien Act and Prior Case Law

The current version of section 16 was enacted in 1903. 770 ILCS 60/16 (West 2006). The language at issue in this case tracks section 20 of the Liens Act of 1845 and section 17 of the Liens Act of 1874 with the exception of the clause "and the lien creditor shall be preferred to the value of the improvements erected on said premises." See *Albrecht v. Buelow*, 191 Ill. App. 481, 487 (1915); see also *Gaty v. Casey*, 15 Ill. 189, 192 (1853). In 1895, the Mechanics' Liens Act provided in section 16 that lien creditors had priority to the extent that the value of the land was "enhanced" by reason of the improvements and that where the owner has paid for labor or material, "the enhanced value thereby given shall be treated as a fund in which the mortgagee and lien-holder shall participate *pro rata*." *Albrecht*, 191 Ill. App. at 487. The Mechanics Lien Act of 1903 substantially

reenacted the aforementioned sections of the 1845 and 1874 Acts, specifying that "the lien creditor shall be preferred to the value of the improvements." See *id.*

This court has applied the provision "upon questions arising between incumbrancers and lien creditors, all previous incumbrances shall be preferred to the extent of the value of the land at the time of making of the contract" on several occasions. With respect to section 20 of the Act of 1845, this court noted that "the statute gives the mechanics and material men liens, paramount to the trust deed, upon the improvements *made by them* upon the premises." (Emphasis added.) *Raymond v. Ewing*, 26 Ill. 329, 343 (1861); see also *Smith v. Moore*, 26 Ill. 392, 396 (1861) (noting that the prior incumbrancer "must look alone to the property as it was, *before the mechanic's or material man's lien attached*, and [the lienholder] must look to the improvement or materials" for satisfaction of their claims (emphasis added)); *Croskey v. Northwestern Manufacturing Co.*, 48 Ill. 481, 484–85 (1868) ("[trial] court should have ascertained at what time the improvements were commenced for which the materials of complainants were furnished, and should have given to the prior mortgagees a paramount lien on the property *as it stood when such improvements were commenced*, and to the complainants a paramount lien on the improvements *towards which they furnished materials*" (emphases added))[1]; *Howett v. Selby*, 54 Ill. 151 (1870); *Clark v. Moore*, 64 Ill. 273 (1872). The language added to this provision in 1903 merely codifies the interpretation of the courts. This was the

---

[1]Eagle argues in its brief to this court that *Croskey* "leaves no doubt about the fact that the mortgagee is preferred to the value of the land and improvements at the time of the attachment of the mortgage and that the mechanics lien claimants are preferred as to the improvements supplied thereafter." This is a misstatement of the holding in *Croskey*. While the opinion does say that "land," as used in the statute, must mean "the land with such improvements as there are upon it at the time of the execution of the mortgage," the court directed that the security of the mortgagee is protected by being "preferred to the extent of the value of the land at the time the contract is made with the mechanic or material man," and that the lien claimants are only entitled to "a paramount lien on the improvements towards which they furnished materials." *Croskey*, 48 Ill. at 483, 485. We find that, read as a whole, *Croskey* supports our reading of the statute.

conclusion of the appellate court in1915. In *Albrecht v. Buelow*, the appellate court summarized the operation of section 20 of the Act of 1845: when a mechanics lien attaches to a property previously encumbered by a mortgage, "such lien is paramount to the lien of the mortgage to the extent of the increased value of the premises by reason of the improvements or repairs." *Albrecht*, 191 Ill. App. at 490. With respect to the earlier decisions of this court, the appellate court concluded, "[i]nasmuch as section 16 of the present Act does not differ materially from section 20 of the Act of 1845, *** these rulings are applicable to the present act." *Id*. at 491.

In almost every subsequent instance, courts have found that the statute gives lienholders priority only with respect to the added value of the property attributable to those improvements forming the basis for the lien in question and gives the mortgagee priority with respect to the value of the land at the time the contract is entered into between the owner and the contractor. See, *e.g.*, *Commercial Mortgage & Finance Co. v. Woodcock Construction Co.*, 51 Ill. App. 2d 61, 64-65 (1964); *Moulding-Brownell Corp. v. E.C. Delfosse Construction Co.*, 304 Ill. App. 491, 500 (1940); see also *Fair Play Development Organization v. Sarmach*, 263 Ill. App. 593, 597 (1931) (noting that a subsequent mechanics lien was "inferior to the lien of the mortgagee to the extent of the value of the premises at the time when the mechanic's lien attached").

Eagle cites, and we have found, only one case that has held otherwise. In *Mitchell v. Robinovitz*, the appellate court affirmed an order that gave the prior mortgagees priority only with respect to the value of the vacant land and four mechanics lien claimants priority with respect to the entire improvement. *Mitchell v. Robinovitz*, 272 Ill. App. 414, 416-17, 424 (1933). The court rejected the mortgagees' arguments that, "[a]s against a prior mortgagee[,] a contractor is preferred *only* to the value of the improvements erected *by him*, and the mortgagee is preferred to the extent of the value of the land, *including in that term* the enhanced value produced by labor and materials *furnished by other contractors* who have been paid, or who have waived, released or failed within the necessary time to assert their liens." (Emphases in original.) *Id*. at 418. The *Mitchell* court, however, "fail[ed] to find evidence of the owner of the premises involved [in] making such payments." *Id*. at 423. To the extent that

*Mitchell* affords priority to lienholders for work done by other contractors and paid for either by or on behalf of the owner of the property, we find it is in error and overrule it.

The courts have thus applied this statute repeatedly and consistently since its adoption over one hundred years ago and the legislature has had ample time to contravene our understanding. This consistent judicial interpretation of the language in section 16 is considered a part of the statute until the legislature amends it contrary to that interpretation. See *People v. Woodard*, 175 Ill. 2d 435, 444 (1997) (citing *Miller v. Lockett*, 98 Ill. 2d 478 (1983)).


Purpose of the Act and Practical Considerations

Our reading is also consistent with both the purpose of the Act and the practicalities of construction lending. The Mechanics Lien Act aims to "protect those who in good faith furnish material or labor for construction of buildings or public improvements." *Lawn Manor Savings & Loan Ass'n v. Hukvari*, 78 Ill. App. 3d 531, 532 (1979). By giving lienholders priority only with respect to their improvements, the Act protects both the contractors and the prior encumbrancers. In its brief to the court, Edon argues that the Act is predicated on the theory "that an owner should pay for the benefit derived from the labor and materials provided by a contractor" by providing "an equitable balance of the rights of owners, lenders and contractors." We find that this is accomplished by prioritizing lien claimants to the value of their improvements, instead of the value of all improvements. Were the lien claimants to be preferred to the value of all improvements, the lien claimants would be unjustly enriched, to the detriment of an owner or mortgagee who funded improvements other than those that form the basis for the liens. This would discourage lenders from lending more than the property is worth at the time the mortgage is issued, hindering developers' access to financing.

Further, LaSalle argues that if, as under the appellate court's decision, the only way a mortgagee could get "credit" for the value of improvements it has funded is to be subrogated to a valid, perfected mechanics lien, lenders would have every reason to require contractors to file mechanics liens and to then evaluate their validity

before paying the contractor for work done on the property. This would significantly increase the paperwork and the cost of financing any construction project. If every contractor had to file a lien before getting paid, this would also defeat one of the purposes of the recording requirement in the Act. Eagle notes that the notice and filing provisions give third parties "notice of the existence, nature and character of lien claims," and allow them to gauge the enforceability of such claims. Eagle argues that these filings are important to contractors to give them an opportunity to review the public record and determine whether a project is "in trouble" based on the liens filed against a property. However, if a mortgagee were only entitled to be preferred to the value of the land at the time the mortgage was contracted into and not to any of the improvements the mortgagee has funded unless it is subrogated to a perfected mechanics lien, there would be multiple mechanics liens on every project, whether or not the project was "in trouble" and this signaling function of the recorded liens would be lost.

For the foregoing reasons, we hold that section 16 of the Mechanics Lien Act gives mechanics lien claimants priority only with respect to the value of the property attributable to those improvements for which they furnished material or services. To the extent that the appellate court gave the lienholders priority with respect to all improvements made subsequent to the mortgage, we find that this was in error.

### Priority As to the Value of Paid-For Improvements

We turn now to one remaining question: if the mortgagee is preferred to the value of the land at the time the owner contracts with the lien claimants, and the lien claimants are preferred only to the value of those improvements that form the basis of their liens, what becomes of any value attributable to those improvements that have been made by contractors after the contracts in question were entered into but who were paid for their work and therefore never filed liens? In *Clark v. Moore*, 64 Ill. 273 (1872), this court addressed the apportionment of proceeds as between mortgagees and mechanics lien claimants when the foreclosure sale proceeds were insufficient to satisfy both claims. In that case, the trial court found that, before any improvements were made, the property was worth $3,500, the

-11-

lienholders contributed $14,000 in improvements, and the owner of the property paid $9,000 to other contractors for improvements to the property. *Id*. at 282. The parties disputed whether the mortgage or the mechanics liens had priority with respect to the enhanced value paid for by the owner. *Id*. This court held:

> "[W]here, as in this case, there is a large proportion of the enhanced value of the property produced by the owner paying for labor and material furnished by others than the parties to the suit, *** the enhanced value produced by the payment of money by the owner, whilst the work was progressing, should be applied to the satisfaction of the mortgages on the property; and if any portion of the fund thus created shall remain, to be applied to the satisfaction of the liens for labor and materials. It has always been recognized the true rule to hold all improvements placed by the mortgagor on the premises as being embraced in and subject to the mortgage. We can not suppose that they were intended, when made, to be for the benefit of other lien holders." *Id*. at 282-83.

Rejecting interpretations that would give lienholders priority to or would give mortgagees and lienholders *pro rata* shares in the value attributable to these improvements, the *Clark* court further reasoned that the lienholders "have their lien on the enhanced value they have given to the property, but have advanced neither money nor materials for which the owner has paid; and the subsequent mortgages may have been given to secure the very money paid by the owner for the labor and materials." *Id*. at 283. Though the Mechanics' Liens Act of 1895 provided that when the owner paid for such improvements, "the enhanced value thereby given shall be treated as a fund in which the mortgagee and lienholder shall participate *pro rata*," in 1903 the legislature substantially reenacted the earlier language that *Clark* interpreted. See *Albrecht*, 191 Ill. App. at 491.

The logic of the *Clark* decision applies equally to this case, and we see no reason to depart from it. In this case, the trial court found that LaSalle paid $1,587,765 in lienable expenses[2] over the eight

---

[2]In its brief to this court, Eagle questions the lienability of some of the expenses LaSalle was subrogated to by the trial court. Neither Eagle nor

draws funded from Cypress's construction loan. The value of these improvements was thus paid by the owner or, at a minimum, on the owner's behalf. We fail to find a meaningful distinction between an owner paying the contractor from his bank account with presumably borrowed funds (given that all owners have a preexisting mortgage on the property when this statutory provision is in question) and authorizing the mortgagee to pay the contractor directly through a draw on the loan. In either case, the payments were presumably not made for the benefit of other lienholders. We find that neither Edon nor Eagle has made a compelling case for treating the payments made by LaSalle as anything other than payments made by the owner and applying that portion of the enhanced value of the property to the satisfaction of the mortgage held by LaSalle.

Eagle argues that because "in 1845, *** a contractor who provided labor or material became a perfected lien claimant as soon as it provided services or material," *Clark* "in essence held that a mortgagee or owner should get the benefit of payments made to perfected mechanics lien claimants who, at that time, was anyone who had provided labor or materials." Even if we presume this to be the case, the *Clark* court nowhere relied on principles of subrogation or the idea that the contractors paid by the owner in that case were perfected lien creditors. Instead, the court appeared to recognize that improvements paid for by the owner to property subject to a mortgage would presumably be paid for out of the proceeds of the mortgage, and therefore it is the mortgagee, not the lienholders, that should take priority with respect to the added value attributable to those improvements. *Clark*, 64 Ill. at 83 (noting that "subsequent mortgages may have been given to secure the very money paid by the owner for the labor and materials").

## Subrogation

In distributing the proceeds of the foreclosure sale, the trial court conducted a proportionality assessment. Two methods have been used

---

Edon contested the lienability of these expenses at trial nor in the appellate court. This issue is, therefore, forfeited. *E&E Hauling, Inc. v. Pollution Control Board*, 107 Ill. 2d 33, 38 (1985).

by courts to determine the value of a mechanics lien–the market value approach and the contract approach. The trial court determined that, because the improvements are not complete, it is difficult if not impossible to determine their market value, and thus employed the contract approach, valuing each mechanics lien at the contract price agreed upon by the owner and the mechanics lien claimant. None of the parties have argued that this was in error.

The trial court determined that the land, prior to the start of construction, was worth $1,360,000. It then determined that the value of all improvements made on the land (including those paid for through draws on the construction loan), valued at their contract price, amounted to $2,068,699. The trial court held that LaSalle was entitled to be subrogated to the extent it paid construction costs, engineering costs, environmental reports, utilities, and the lien of Basic Development, which predated the mortgage.

Our analysis above makes subrogation unnecessary in a case like this, with the exception of the payment of Basic Development's lien. Because the trial court used the contract method of determining the value of the mechanics lien claimants' improvements to the property, it was correct to apply the same method to value all other lienable improvements–those paid for by the eight draws made on LaSalle's loan to Cypress. The value of these improvements, paid for with mortgage proceeds, should thus go toward the satisfaction of the mortgage without a question of subrogation arising.

The end result, however, is the same. By subrogating LaSalle to the value of the improvements, the trial court conducted the same type of analysis as would be required if it had valued those improvements that formed the basis for the mechanics liens and then valued the rest of the land and given LaSalle credit in a proportionality determination for the latter.

We note that LaSalle paid $30,202 to Basic Development for a lien that predated the mortgage. The parties do not dispute that LaSalle was properly subrogated to this claim. See *Detroit Steel Products Co. v. Hudes*, 17 Ill. App. 2d 514 (1958). They have not presented any arguments regarding the priority this claim should take with respect to the claims arising out of the mortgage or the subsequent mechanic's liens, and therefore, we take no position with regard to this issue.

-14-

CONCLUSION

For the reasons discussed above, we hold that, in a proportionality determination under section 16 of the Mechanics Lien Act, the value of the property attributable to improvements paid for with proceeds of a mortgage and construction loan should be attributed toward the satisfaction of the mortgage. We therefore find that the appellate court erred when it reversed the trial court's distribution of proceeds. Accordingly, we reverse the judgment of the appellate court on this point and remand to the trial court for further proceedings consistent with this opinion. Because Edon and Eagle have not appealed the appellate court's award of LaSalle's attorney fees (398 Ill. App. 3d at 601), we affirm the appellate court on that point. We additionally overrule *Mitchell v. Robinovitz*, 272 Ill. App. 414 (1933), to the extent that it is inconsistent with this opinion.

Appellate court judgment affirmed in part and reversed in part; cause remanded.

JUSTICE FREEMAN, dissenting:

I believe today's opinion incorrectly construes section 16 of the Mechanics Lien Act. I therefore respectfully dissent.

Background

None of the relevant facts are disputed in this appeal. In 2003, LaSalle National Bank Association lent Cypress Creek 1, L.P., a development group, $8,018,151 for construction of a housing development. The note was secured by a mortgage and security agreement, recorded in June 2003. This represents the only loan made by LaSalle to Cypress.

Subsequently, Cypress entered into agreements with various contractors to build the development. Importantly, *after the loan from LaSalle was in default*, LaSalle continued to advance Cypress $1,557,563 from the loan proceeds. Cypress used this money to pay contractors for construction work performed at the development site. Eagle Concrete, however, was not paid for the concrete work it

-15-

performed and thus recorded a mechanics lien for $62,478 in November 2005. Edon Construction Company was also not paid for its carpentry work on the project, and it recorded a mechanics lien for $285,826.80 in November 2005.

In July 2005, LaSalle filed suit to foreclose on the mortgage. Eagle filed a complaint to foreclose on its mechanics lien on March 30, 2006.[3] Judgment in the mortgage foreclosure case was entered in April 2006, with a finding that the balance due on the mortgage was $8,621,110, which included late fees, penalties, and costs. At some point thereafter, the order of judgment was amended to reflect payment on the judgment of $5,577,540, leaving $3,043,570 as the final judgment amount. In May 2006, the property was sold to LaSalle for $1.3 million.

Analysis

The question here is one of lien priority since the proceeds from the sale were insufficient to satisfy all of the parties who have liens against this property. Although the court recognizes that this question is to be decided under section 16 of the Mechanics Lien Act, the court's analysis does not apply the statute's plain language.

Section 16 provides:

"No incumbrance upon land, created before or after the making of the contract under the provisions of this act, shall operate upon the building erected, or materials furnished until a lien in favor of the persons having done work or furnished material shall have been satisfied, and upon questions arising between incumbrancers and lien creditors, all previous incumbrances shall be preferred to the extent of the value of the land at the time of making of the contract, and the lien creditor shall be preferred to the value of the improvements erected on said premises, and the court shall ascertain by jury or otherwise, as the case may require, what proportion of the proceeds of any sale shall be paid to the several parties in

---

[3]Edon filed its complaint to foreclose its mechanics lien in August 2006. The various lien claimants actions were consolidated with the mortgage foreclosure proceeding.

interest. All incumbrances, whether by mortgage, judgment or otherwise, charged and shown to be fraudulent, in respect to creditors, may be set aside by the court, and the premises freed and discharged from such fraudulent incumbrance." 770 ILCS 60/16 (West 2006).

Under this language, priority is determined by first looking at whether the lien claimants' contracts were executed before or after the mortgage was recorded. 770 ILCS 60/16 (West 2006). Both Edon and Eagle entered into contracts with Cypress after LaSalle had recorded its mortgage.

In such situations, section 16 directs that Eagle's and Edon's liens are preferred to the extent of the value of their improvements to the land (usually the price of their original contracts less any payments made),[4] while LaSalle, as mortgagee, is preferred to the value of the land before those improvements. See 770 ILCS 60/16 (West 2006). Section 16 further provides that a proportionality analysis be used when the sale proceeds are insufficient to satisfy the liens and the mortgage in full. See 770 ILCS 60/16 (West 2006). This means that the parties share, pro rata, in their relative proportionate interests determined by using those numbers.

The court interprets the plain language of section 16 so as to treat the $1,587,765 that Cypress paid to contractors from its loan with LaSalle, *after the loan was already in default*, as the equivalent of a mechanics lien claim. In other words, LaSalle's role as the lender in this project put it on equal footing with the other unpaid claimants, such as Edon and Eagle. The effect of this is to improperly increase LaSalle's pro rata percentage to more than it is entitled to under the Act. I disagree with this approach for several reasons.

First, this court has long recognized that mechanics liens are

---

[4]Illinois courts use two different methods in determining the value of the improvements, the "market value" approach and the "contract price" approach. See *Lyons Savings v. Gash Associates*, 279 Ill. App. 3d 742 (1996) (explaining differences in methods and noting that the market value approach is inappropriate in cases where sales proceeds are insufficient to satisfy both the mortgage and the mechanics liens). The parties do not dispute the methodology used in this case.

created purely by statute and are in derogation of the common law. *Norman A. Koglin Associates v. Valenz Oro, Inc.*, 176 Ill. 2d 385, 390 (1997); *Koester v. Huron Development Co.*, 25 Ill. 2d 337, 340 (1962); *North Side Sash & Door Co. v. Hecht*, 295 Ill. 515, 519 (1920); *Cronin v. Tatge*, 281 Ill. 336, 337 (1917). Therefore, those seeking to assert the Act's protections must bring themselves within the Act's provisions. *Charles A. Hohmeier Lumber Co. v. Knight*, 350 Ill. 248 (1932). The Act is strictly construed with reference to those requirements upon which the right to a mechanics lien depends. *First Federal Savings & Loan Ass'n of Chicago v. Connelly*, 97 Ill. 2d 242, 246 (1983). This means that courts are to enforce mechanics liens whenever lien claimants meet the requirements of the Act, but cannot extend the Act's protections to those who fall outside the Act's provisions. *Hoier v. Kaplan*, 313 Ill. 448 (1924).

Section 1 of the Act entitles any person who, in order to improve real estate, provides labor, services, materials or fixtures either under a contract with the owner or someone authorized by the owner to assert a lien under the Act if he or she is not paid. 770 ILCS 60/1 (West 2006). A contractor is defined as the party in privity with the owner of the real estate, the owner's agent or anyone whom the owner has knowingly permitted to make improvements. *Id.* Subcontractors who provide labor, services, material, or fixtures for the improvement of real estate may also assert liens under the Act. *Id.*[5] LaSalle is simply not a material provider as so defined and the court should not, by judicial fiat, confer that status on LaSalle.

Second, the court relies on *Clark v. Moore*, 64 Ill. 273 (1872), to reach its result (slip op. at 11-12), but *Clark* is of little help in resolving the issue. *Clark* concerned giving an *owner* of property priority for improvements to the property the owner made. The court treated the owner as a lien claimant because he paid for substantial improvements to the property. He was not an incumbrancer. The issues in the present case do not involve a priority claim by an owner, but a mortgagee, a critical difference under the Act. The court,

---

[5]The Act defines subcontractors as parties who have contracts with the general contractor as opposed to the owner. 770 ILCS 60/21 (West 2006). This provision is not at issue in this case since it is undisputed that both Edon and Eagle contracted directly with Cypress.

however, states that it

> "fail[s] to find a meaningful distinction between an owner paying the contractor from his bank account with presumably borrowed funds (given that all owners have a preexisting mortgage on the property when this statutory provision is in question) and authorizing the mortgagee to pay the contractor directly through a draw on a loan. In either case, the payments were presumably not made for the benefit of other lienholders." Slip op. at 13.

While the court might not see a meaningful distinction between owners and incumbrancers, the General Assembly does because the Act distinguishes between owners (770 ILCS 60/4, 27 (West 2006)), incumbrancers (mortgagees) (770 ILCS 60/16 (West 2006)), contractors (770 ILCS 60/1 (West 2006)), and subcontractors (770 ILCS 60/5, 21 (West 2006)). Indeed, the very section at issue in this case, section 16, distinguishes between incumbrancers and lien creditors–they are not treated alike.

More importantly, this court in *Clark,* in granting the owner priority, relied primarily on then-section 23 of the Mechanics Lien Law, which vested courts in mechanics lien cases with sweeping equitable powers. *Clark*, 64 Ill. at 277-78. Section 23 was repealed when the Mechanics Lien Law was revised in 1874. See Ill. Rev. Stat. 1895, ch. 82, par. 54. Thus, it appears that the court, in granting the owner priority, relied on notions of equity in its construction of the lien law.[6] There is no section in the current Act that gives courts the

---

[6]With respect to its statutory construction, *Clark* is confusing. The opinion cites to the "12th section of the lien law," stating that this section "declares that incumbrances on the property prior or subsequent to making the contract for erecting the building shall not operate upon the building or materials until the liens in favor of the workmen and the material-men shall be satisfied; and upon questions between previous incumbrancers and creditors, the previous incumbrance shall be preferred to the value of the land at the time of making the contract." *Clark*, 64 Ill. at 282. However, at the time *Clark* was decided section 12 of the mechanics lien law stated no such thing. Rather, the section provided that "Upon the trial of causes under the provisions of this chapter, the court shall ascertain the amount due each creditor, and shall direct the application of the proceeds of sales to be made

-19-

broad powers that existed when this court decided *Clark* in 1872. Today's opinion does not acknowledge this important change to Act.

A simple illustration of the proportionality analysis that is contemplated by the Act and that should be used in this case can be found in *Bradley v. Simpson*, 93 Ill. 93 (1879), which is not cited in today's opinion. In *Bradley*, the subject property was worth $3,200 before improvements were made to erect a building. The mechanics lien claimants, in constructing the building on the land, enhanced the value "by reason of their labor and materials furnished" in the amount of $6292. *Id.* The mortgage on the property was $5,657. The property was sold for $3,338.91. The trial judge ruled that the mortgagee was entitled to the proportion of the net proceeds of the sale: "that the value of the property before the improvements were put upon it bore to the total value of the property after the improvements were made, that is, that she was entitled to 3200/9492 of $3338.91, being the sum of $1125.63." *Id.* at 94. This court affirmed the trial court's decision, rejecting the mortgagee's claim that she was entitled to her full $3,200:

> "As between the mortgages and the mechanic's liens, under the statute the mortgages were entitled to satisfaction out of the land, and the other liens out of the building. *As the building could not properly be separated from the lots, in order to realize the benefit of the liens the whole property, land and building together, had to be sold, that it might be converted into money and the proceeds divided. The proceeds of the sale represent and stand in the place of the land and the building, and the parties have the same proportionate interest in the proceeds that they had in the property before it was sold.*" (Emphasis added.) *Bradley*, 93 Ill. at 95.

---

to each in proportion to their several amounts." Ill. Rev. Stat. 1845, ch. 65, par. 12. At the time *Clark* was decided, language regarding "previous incumbrancers and creditors" could be found in *section 20* of the lien law, which provided that "the previous incumbrance shall be preferred to the extent of the value of the land at the time of the making of the contract." Ill. Rev. Stat. 1845, ch. 65, par. 20. This erroneous citation renders the opinion's statutory analysis problematic at best, if not outright questionable.

This analysis makes clear that *all* improvements are to be added to the value of the land before apportioning percentages to the sales proceeds when those proceeds cannot satisfy the mortgage and lien claimants. In *Bradley,* the mortgagee's percentage from the sale was approximately 33.7% (3200/9492). The analysis in *Bradley* therefore demonstrates that the court today is incorrect when it states that "improvements" as used in the statute "cannot mean *all* improvements." (Emphasis in original.) Slip op. at 7.

Moreover, and contrary to the court's interpretation (*id*. at 8 n.1), *Bradley* teaches that Eagle correctly argues that this court's decision in *Croskey v. Northwestern Manufacturing Co.*, 48 Ill. 481 (1868), "leaves no doubt about the fact that the mortgagee is preferred to the value of the land and improvements at the time of the attachment of the mortgage and that the mechanics lien claimants are preferred as to the improvements supplied thereafter." *Id*. The statute contemplates that lien claimants will be preferred to the proportionate value of the improvements they provided. LaSalle's loan of its funds did not "enhance" the value of the property, under section 16, it is the work done by the mechanics lien claimants that "enhances" the value.

Under the plain language of section 16, LaSalle, an "incumbrancer" (*i.e.*, mortgagee) has priority with respect to only the value of the land before improvements. Everyone agrees in this case that the value of the land before any improvements were made was $1,360,000. According to the plain language of section 16, with respect to the priority as between "incumbrancers" (mortgagees) and "lien creditors" (mechanics lien holders), all "previous incumbrances" (mortgagees) shall be preferred only to the extent of the value of the land (here, $1,360,000) "at the time of the making of the contract" and the lien creditors (each mechanic lien holder) "shall be preferred to the value of the improvements erected on said premises [for Edon, $285,827; for Eagle $63,478]." 770 ILCS 60/16 (West 2006). Here, however, just as in *Bradley*, because

> "the building could not properly be separated from the lots, in order to realize the benefit of the liens the whole property, land and building together, had to be sold, that it might be converted into money and the proceeds divided. The proceeds of the sale represent and stand in the place of the land and the building, and the parties have the same proportionate interest

in the proceeds that they had in the property before it was sold." *Bradley*, 93 Ill. at 95.

The improvements made to the property by the lien claimants in this case totaled $480,934.[7] The sum of this figure plus the value of the land before improvements is $1,840,934. As demonstrated in *Bradley*, that number is to be used as the denominator in determining the pro rata interest each party is to receive under section 16. For example, LaSalle's proportional share of the sale proceeds is 73.8% (1,360,000/1,840,934). Eagle's proportional share of the sale proceeds is 3.4% (63,478/1,840,934), and Edon's proportional share is 15.5% (285,827/1,840,934). The sale proceeds, once the expenses of the sale and receiver were paid, were $552,214.06. Of that, LaSalle should receive $407,533.98, Eagle should receive $18,775.28, and Edon should receive $85,593.18. This allocation more correctly reflects the intent of the legislature in enacting the Act, which was to extend statutory protection for unpaid work done, not for money lent.

In light of the above, I have difficulty in ascertaining the basis for the court's holding that it is the plain language of section 16 which allows LaSalle to be treated as the equivalent of a contractor. Slip op. at 14. This conflicts with the analysis in *Bradley*, which postdates *Clark* and it thus appears that *Bradley* has now been overruled *sub silentio*. I am concerned that today's opinion will add confusion to an area of Illinois law, mechanics liens, that has already been acknowledged by this court to be both "technical and complex." *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 79 (1995); see also *Hermitage*, 166 Ill. 2d at 93 (Freeman, J., dissenting, joined by Bilandic, C.J.) (agreeing that mechanics lien law is "technical and complex"). Contributing to the real possibility of confusion is the court's reference to equitable subrogation.[8] The

---

[7]This represents the sum of the lien claimants as found by the trial court: All American $46,200; Eagle: $63,478; Gallagher: $46,506; Another Plumbing: $38,923; and Edon $285,827.

[8]Illinois courts recognize two forms of subrogation: equitable subrogation which is based in the common law and conventional subrogation which is based on an express provision contained in a contract. *Aames Capital Corp. v. Interstate Bank of Oak Forest*, 315 Ill. App. 3d

opinion maintains that its result in increasing LaSalle's pro rata share by the $1.5 million advanced (again after the loan was in default) is not achieved by applying equitable subrogation principles. Slip op. at 14. But the plain language of section 16 does not otherwise permit LaSalle's position as incumbrancer to be equated with that of a mechanics lien creditor, for reasons that I have already explained. That would leave subrogation as the only means for doing so, as both parties in the case argue.[9]

JUSTICE BURKE joins in this dissent.

---

700, 706 (2000). Equitable subrogation, which is more rare, has been described by this court as a "creature of chancery *** [utilized] to prevent injustice and unjust enrichment." *Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill. 2d 314, 319 (1992). As one court has stated "no general rule *** can be laid down to determine whether a right of equitable subrogation exists, since the right depends upon the equities of each particular case." *Aames*, 315 Ill. App. 3d at 706.

[9]It bears mentioning that the doctrine of equitable subrogation confers priority, and priority is relief that must be pled. *Norman A. Koglin Associates v. Valenz Oro, Inc.*, 176 Ill. 2d 385, 390-95 (1997). LaSalle, in its amended affirmative defenses to Eagle's complaint stated the following: "By paying the trust which paid construction draws, LaSalle is subrogated to the trust's position which has priority over the lien claimants paid with trust funds." In its answer and affirmative defenses to Edon's complaint to foreclose on Edon's mechanics lien, LaSalle did not assert a similar priority claim, but rather maintained that Edon's claim was barred by *laches* and that Edon's interest in the property was limited to an interest in the proceeds of the sheriff's sale. It appears that lien priority is more properly alleged in a counterclaim (see 735 ILCS 5/2–608 (West 2006)), although there is case law that suggests that it can be alleged as an affirmative defense. See *Mountain States Mortgage Center, Inc. v. Allen*, 257 Ill. App. 3d 372, 381-82 (1993) (quoting Ill. Rev. Stat. 1991, ch. 110, par. 2–613(d)). An affirmative defense is something that "avoid[s] the legal effect of or defeat[s]" a claim, such as "payment, release, satisfaction," and the like. 735 ILCS 5/2–613(d) (West 2006). Even if a lien has priority over another, that fact does not "avoid" or "defeat" the lien creditors' foreclosure action, it would mean only that both were in line for payment behind LaSalle.